IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAYSOUN ABUDAYYEH, individually and
on behalf of all others similarly situated,

        Plaintiff,

    v.

ENVOY AIR, INC.,

        Defendant.

Case No. 1:21-cv-00142

**ENVOY AIR, INC.'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF ITS MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ...................................................................................................... 4

    I.    The RLA Mandates That The System Board Has Exclusive Jurisdiction Over Plaintiff's Claim. ............................................................................. 5

        A.    Claims That Require Interpretation/Application of Agreements Between Carriers and Unions Can Only Be Pursued Before The Applicable System Board—Regardless of Whether Such Agreements Are Express or Implied. ........................................... 5

        B.    Seventh Circuit Precedent Establishes That BIPA Claims Brought By Unionized Employees Are Preempted. ................................. 8

    II.    The ADA Preempts Plaintiff's Claim. ................................................. 11

        A.    The ADA Broadly Preempts State-Law Claims That Relate To Air Carriers' Services. .................................................................... 12

        B.    The ADA Preempts Plaintiff's Claim Because It Relates To Envoy's Most Important Service: Safe Passenger Transportation. ........ 12

CONCLUSION .................................................................................................. 15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*American Airlines, Inc. v. Wolens*,
 513 U.S. 219 (1995)......................................................................... 12, 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................... 5

*Belcastro v. United Airlines, Inc.*,
 2018 WL 1875537 (N.D. Ill. Apr. 19, 2018) ....................................... 5

*Belgard v. United Airlines*,
 857 P.2d 467 (Colo. Ct. App. 1992) .................................................. 13

*Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*,
 373 U.S. 33 (1963)............................................................................ 1, 5

*Bhd. of Maint. of Way Employees Div./IBT v. Norfolk S. Ry. Co.*,
 745 F.3d 808 (7th Cir. 2014) ............................................................... 7

*Capitol Leasing Co. v. FDIC*,
 999 F.2d 188 (7th Cir. 1993) ............................................................... 3

*Capraro v. United Parcel Serv. Co.*,
 993 F.2d 328 (3d Cir. 1993) ................................................................ 8

*Consol. Rail Corp. v. Ry. Labor Executives' Ass'n ("Conrail")*,
 491 U.S. 299 (1989)........................................................................... 6, 8

*Copeland v. Nw. Airlines Corp.*,
 2005 WL 2365255 (W.D. Tenn. Feb. 28, 2005).................................. 15

*Crooms v. Sw. Airlines Co.*,
 459 F. Supp. 3d 1041 (N.D. Ill. 2020) ................................................ 9

*Doucette v. CIM Grp., L.P.*,
 2020 WL 30268 (C.D. Cal. Jan. 2, 2020) ........................................... 7

*Dowaliby v. National Railroad Passenger Corp.*,,
 26 F.3d 130 (9th Cir. 1994) ................................................................. 8

*Elgin, J. & E. Ry. Co. v. Burley*,
 325 U.S. 711 (1945)............................................................................. 5

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Fernandez v. Kerry, Inc.*,
  2020 WL 7027587 (N.D. Ill. Nov. 30, 2020) ........................................................................ 10

*Frisby v. Sky Chefs, Inc.*,
  2020 WL 4437805 (N.D. Ill. Aug. 3, 2020) ........................................................................... 9

*Fry v. Airline Pilots Ass'n, Int'l.*,
  88 F.3d 831 (10th Cir. 1996) ........................................................................................... 6, 8

*Gil v. True World Foods Chicago, LLC*,
  2020 WL 7027727 (N.D. Ill. Nov. 30, 2020) ........................................................................ 10

*Gray v. Univ. of Chicago Med. Ctr., Inc.*,
  2020 WL 1445608 (N.D. Ill. Mar. 25, 2020) ......................................................................... 10

*Hawaiian Airlines, Inc. v. Norris*,
  512 U.S. 246 (1994) ...................................................................................................... 6, 8

*In re American Airlines, Inc., Privacy Litig.*,
  370 F. Supp. 2d 552 (N.D. Tex. 2005) ............................................................................ 14, 15

*In re Jetblue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................................. 14

*In re Nw. Airlines Privacy Litig.*,
  2004 WL 1278459 (D. Minn. June 6, 2004) ...................................................................... 15, 16

*Kwasnik v. National Railroad Passenger Corp.*,
  1997 WL 109977 (N.D. Ill. Mar. 7, 1997) ............................................................................. 8

*Leu v. Norfolk & W. Ry. Co.*,
  820 F.2d 825 (7th Cir. 1987) ............................................................................................. 5

*Local 194 C & T, United Transp. Union v. Consol. Rail Corp.*,
  672 F.2d 621 (7th Cir. 1982) ............................................................................................. 6

*McGarry v. Delta Air Lines, Inc.*,
  2019 WL 2558199 (C.D. Cal. June 18, 2019) ........................................................................ 15

*McQuestion v. New Jersey Transit Rail Operations, Inc.*,
  30 F.3d 388 (3d Cir. 1994) ................................................................................................ 7

*Miller v. Southwest Airlines Co.*,
  926 F.3d 898 (7th Cir. 2019) ............................................................................... 1, 9, 10, 11

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Monroe v. Mo. Pac. R. R. Co.*,
  115 F.3d 514 (7th Cir. 1997) ................................................................. 6, 8

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992).............................................................................. 12, 13

*Ninger v. El Al Israel Airlines, Inc.*,
  2000 WL 557327 (S.D.N.Y. May 8, 2000) ............................................ 7

*Northwest, Inc. v. Ginsberg*,
  134 S. Ct. 1422 (2014)........................................................................... 12

*Peatry v. Bimbo Bakeries USA, Inc.*,
  2020 WL 919202 (N.D. Ill. Feb. 26, 2020) ........................................... 10

*Pena v. British Airways, PLC (UK)*,
  2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020) ....................................... 15

*Roberson v. Maestro Consulting Servs. LLC*,
  2020 WL 7342693 (S.D. Ill. Dec. 14, 2020) .......................................... 9

*Santiago v. United Air Lines, Inc.*,
  2012 WL 3583057 (N.D. Ill. Aug. 17, 2012) ......................................... 6

*The People ex rel. Harris v. Delta Air Lines, Inc.*,
  247 Cal. App. 4th 884 (2016) ................................................................ 15

*Tice v. Am. Airlines, Inc.*,
  288 F.3d 313 (7th Cir. 2002) ................................................................. 5

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
  73 F.3d 1423 (7th Cir. 1996) ................................................................. 12

*United Transp. Union v. Gateway W. Ry. Co.*,
  78 F.3d 1208 (7th Cir. 1996) ................................................................. 3

*Wien Air Alaska, Inc. v. Bachner*,
  865 F.2d 1106 (9th Cir. 1989) ............................................................... 5

*Williams v. Jackson Park SLF, LLC*,
  2020 WL 5702294 (N.D. Ill. Sept. 24, 2020) ........................................ 10

iv

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

45 U.S.C. § 153(i) ........................................................................................................ 7

49 U.S.C. § 41713 ...................................................................................................... 12

49 U.S.C. App. § 1302(a)(1) ...................................................................................... 13

49 U.S.C. App. § 1302(a)(4) ...................................................................................... 13

740 ILCS 14/5(b) ....................................................................................................... 11

## INTRODUCTION

In her Complaint, Plaintiff Maysoun Abudayyeh ("Plaintiff") asserts that Defendant Envoy Air, Inc. ("Envoy") violated the Illinois Biometric Information Privacy Act ("BIPA"). For the reasons detailed below, the Railway Labor Act ("RLA") mandates that the arbitration panel established by Envoy and her union has exclusive jurisdiction to resolve Plaintiff's claim—and thus her Complaint should be dismissed pursuant to Rule 12(b)(1). Alternatively, her claim is preempted by the Airline Deregulation Act ("ADA") and should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

Under the RLA, any state law claim that requires interpretation or application of an agreement between an airline and a union is a "minor dispute" over which courts (both state and federal) lack jurisdiction. *See, e.g.*, *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 36-38 (1963). The RLA mandates that all minor disputes be submitted to final and binding arbitration before a panel known as a board of adjustment—and such arbitration panels have "mandatory, exclusive, and comprehensive" jurisdiction over minor disputes. *Id*. at 38. The Seventh Circuit has held that BIPA claims brought against RLA employers like Envoy are inherently minor disputes because "how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining." *See Miller v. Southwest Airlines Co*., 926 F.3d 898, 903 (7th Cir. 2019). Accordingly, as the Seventh Circuit held, "[i]t is not possible even in principle to litigate a dispute about how an air carrier acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf." *Id*. at 904. Here, Plaintiff was a unionized employee for the entirety of the relevant time and represented by the Communications Workers of America ("CWA"). The CWA consented on behalf of Plaintiff and its other members to Envoy's timekeeping procedures, and Envoy and the CWA have agreed to those

procedures. Accordingly, because resolution of Plaintiff's claim requires interpretation and/or application of an agreement between an airline and a union and specifically whether the union consented, the applicable board of adjustment has exclusive jurisdiction.

Alternatively, the ADA preempts Plaintiff's BIPA claim. The ADA broadly preempts any state law claim that "relates" to the "services" of an airline. Envoy's core service is to deliver passengers safely throughout the country. As Plaintiff alleges in her Complaint, the handprints and fingerprint scans about which she complains allow Envoy to verify who is coming and going from the airport and working for Envoy's operations. This directly relates to Envoy's core service of safely transporting the flying public—the most important element of the services provided by any airline. Thus, if this Court were to decline to dismiss on RLA grounds, it should dismiss because Plaintiff has failed to state a claim based on ADA preemption.

## FACTUAL BACKGROUND

### A. The Parties

Envoy is "a regional commercial airline that operates throughout the United States, including in multiple facilities throughout the State of Illinois." (Compl. ¶ 6.)[1] Plaintiff is a former Envoy employee who worked as a passenger service agent ("PSA") employee "at O'Hare International Airport located in Chicago, Cook County, Illinois from in or about July 2000 through February 13, 2017, and June 29, 2017 through September 2017." (*Id.* ¶¶ 5, 11.) Plaintiff alleges that she and other employees were required to scan their handprint and/or fingerprint when arriving at work each day before performing work for Envoy. (*Id.* ¶¶ 12, 32.)

### B. Plaintiff's Union

On November 25, 2015, the National Mediation Board certified the CWA as the

---

[1] Envoy treats Plaintiff's allegations as true solely for the Rule 12(b)(6) portion of Envoy's motion.

exclusive bargaining representative of Envoy's PSA employees, including Plaintiff. (*Id.* ¶ 25); *see also Envoy Air, Inc.*, 43 NMB 7 (Nov. 25, 2015). In her Complaint, Plaintiff incorrectly asserts that, "[p]rior to August 15, 2019, there was no collective bargaining agreement controlling the terms of employment for Plaintiff." (Compl. ¶ 28.) Based on this incorrect assertion—and her correct assertion that on July 19, 2019, Envoy and the CWA entered into a "Letter of Agreement regarding arbitration and waiver of certain claims"—Plaintiff misguidedly attempts to plead around the August 15, 2019 Envoy-CWA agreement by limiting her class claims from December 23, 2015 to July 18, 2019. (*See* Compl. ¶¶ 26-27, 32.)

But Envoy and the CWA reached numerous express and implied agreements before August 15, 2019, including regarding Envoy's timekeeping procedures. (Declaration of Renae Clemens ("Clemens Decl.") Exs. 1-3.)[2] As to prior express agreements, Envoy and the CWA established an interim grievance procedure (entered on June 29, 2016), set new wage rates (entered on April 26, 2017) and waived the protection of any "Federal, State or Local statute, law, regulation, ordinance, or other governing provision … to the extent such Laws permit a waiver … for employees covered under a collective bargaining agreement" (entered on July 27, 2016 and made effective on April 26, 2017). (*Id.* Exs. 1-2.)

As mandated by Section 204 of the RLA, 45 U.S.C. § 184, on September 14, 2016, Envoy and the CWA established a grievance procedure that culminates in final and binding arbitration before the Envoy System Board of Adjustment, which was made effective on April 26, 2017. (*Id.* Ex. 2.) Pursuant to that agreement, the Envoy System Board of Adjustment has

---

[2] The Court may consider this declaration and any other relevant documents in determining whether it has subject matter jurisdiction in deciding a motion to dismiss pursuant to Rule 12(b)(1). *See*, *e.g.*, *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) ("The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (internal quotation marks omitted); *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996) (same).

exclusive jurisdiction over any dispute "involving interpretation or application of" any agreement between Envoy and the CWA.  (*Id.*)[3]

## C.   **Envoy's Use Of Handprint and Fingerprint Scans**

Plaintiff challenges Envoy's use of handprint and fingerprint scan technology from December 23, 2015 through July 19, 2019.  (Compl. ¶ 32.)  Prior to the start of her proposed class period through the end of her proposed class period, the CWA represented PSA employees as their certified and exclusive union representative.  (Clemens Decl. ¶ 10.)  Each member of the CWA negotiating committee would have been aware of Envoy's timekeeping technology as they are themselves required to use the handprint and finger scan timekeeping devices to perform their duties as passenger service agents.  (*Id.* ¶ 11.)  And since that time to the present, the CWA has never filed a grievance or complained about any aspect of Envoy's use of this technology. (*Id.* ¶ 12.)  Moreover, on July 19, 2019, Envoy and the CWA expressly agreed that individual PSAs' claims that relate to, among other things, the "manner of clocking in and clocking out" must be arbitrated before the Envoy System Board of Adjustment, even if they do not require interpretation or application of a collectively bargained agreement.  (*See id.* Ex. 3.)[4]

## ARGUMENT

Under Rule 12(b)(1), a federal court must dismiss a complaint if it lacks subject-matter jurisdiction.  The plaintiff bears the burden of proving that jurisdiction exists.  *See, e.g.*, *Leu v. Norfolk & W. Ry. Co.*, 820 F.2d 825, 828 (7th Cir. 1987) ("RLA preemption divests the state and federal courts of subject matter jurisdiction over 'minor disputes.'").  Rule 12(b)(6) requires

---

[3] Article 30 of the August 15, 2019 agreement between Envoy and CWA governs the Envoy System Board of Adjustment.  (Clemens Decl. Ex. 4.)

[4] Notably, an administrative agency previously concluded that this agreement has retroactive application. (*See* Clemens Decl. Ex. 5.)

dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

I.      **The RLA Mandates That The System Board Has Exclusive Jurisdiction Over Plaintiff's Claim.**

A.      **Claims That Require Interpretation/Application of Agreements Between Carriers and Unions Can Only Be Pursued Before The Applicable System Board—Regardless of Whether Such Agreements Are Express or Implied.**

Under the RLA, a "minor dispute" is a dispute whose resolution requires interpretation or application of a collectively bargained agreement (i.e., an agreement between a union and an RLA employer). *See, e.g.*, *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-23 (1945).[5] Courts do not have jurisdiction to decide minor disputes. *See, e.g.*, *Bhd. of Locomotive Eng'rs*, 373 U.S. at 36-38. Rather, arbitral boards of adjustment established pursuant to the RLA have "mandatory, exclusive, and comprehensive" jurisdiction. *Id.* at 38; *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002); *see also Belcastro v. United Airlines, Inc.*, 2018 WL 1875537, at *6 (N.D. Ill. Apr. 19, 2018) ("Minor disputes are subject to mandatory and exclusive arbitration.") (Wood, J.) (internal citations omitted).

The RLA preempts state law claims that require the "interpretation or application of a collectively bargained agreement." *Local 194 C & T, United Transp. Union v. Consol. Rail Corp.*, 672 F.2d 621, 625 (7th Cir. 1982); *see also Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 262 (1994). Courts must therefore find "preemption whenever a claim's resolution calls for

---

[5] Major disputes "arise where there is no … agreement or where it is sought to change the terms of one …." (*Burley*, 325 U.S. at 722-23) and can only arise between a union and a carrier. *See, e.g.*, *Wien Air Alaska, Inc. v. Bachner*, 865 F.2d 1106, 1109 (9th Cir. 1989).

interpretation of a CBA." *Fry v. Airline Pilots Ass'n, Int'l.*, 88 F.3d 831, 835-36 (10th Cir. 1996); *see also Monroe v. Mo. Pac. R. R. Co.*, 115 F.3d 514, 517 (7th Cir. 1997).[6]

In addition to claims based on express, written agreements, minor disputes include claims that require interpretation or application of implied agreements between carriers and unions. *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n ("Conrail")*, 491 U.S. 299, 300 (1989). In *Conrail*, for example, the employer had a practice of requiring its employees to undergo physical examinations periodically and upon return from a leave of absence. 491 U.S. at 300. Although the employer previously had only conducted drug testing as a part of these exams in limited circumstances, the employer decided that all such physical exams going forward would include a test for drugs. *Id.* The written collective bargaining agreement between the parties did not address the subject of physical exams or drug testing during such exams—in fact, that agreement was not even in the record before the Supreme Court. *Id.* at 311. Instead, the employer based its right to impose drug testing "solely upon implied contractual terms, as interpreted in light of past practice." *Id.* at 312. The Supreme Court agreed that the dispute over the newly imposed drug testing was a minor dispute. *Id.* The Court based its ruling on the employer's past practice of conducting physical exams and imposing periodic changes to those exams, including some drug testing, without objection from the union. *Id.* at 313, 317-20.

Consistent with *Conrail*, the Seventh Circuit has held that in the RLA context, there are "implied contractual terms, which the parties established through past practices." *Bhd. of Maint. of Way Employees Div./IBT v. Norfolk S. Ry. Co.*, 745 F.3d 808, 813 (7th Cir. 2014). Similarly, in *McQuestion v. New Jersey Transit Rail Operations, Inc.*, the Third Circuit considered whether state-law claims brought by terminated union employees constituted minor disputes, even though

---

[6] The RLA's mandatory arbitration procedures apply to claims brought by both current and former union employees. *See Santiago v. United Air Lines, Inc.*, 2012 WL 3583057, at *3 (N.D. Ill. Aug. 17, 2012).

"no collective bargaining agreement had yet been ratified by the union membership at the time when the employees were discharged." 30 F.3d 388, 390 (3d Cir. 1994). The court found that such claims were minor disputes, holding "there was a de facto ('implied in fact') agreement on certain aspects of the employment relationship between the union and [carrier]," and "[t]he fact that these particular matters were not incorporated into a formal, ratified contract … does not deprive the Adjustment Board of jurisdiction." *Id.* at 396. The Third Circuit concluded by holding "[t]he Railway Labor Act does not require a ratified collective bargaining agreement, but speaks only in terms of an 'agreement,'" and therefore, it found that the employees' claims were minor disputes within the jurisdiction of the adjustment board. *Id.* at 397; *see* 45 U.S.C. § 153(i) (system boards of adjustment have exclusive jurisdiction over "disputes *between an employee or group of employees and a carrier* or carriers growing out of … *the interpretation or application of agreements concerning rates of pay, rules, or working conditions ....*") (emphasis added); *see also Ninger v. El Al Israel Airlines, Inc*., 2000 WL 557327, at *2 (S.D.N.Y. May 8, 2000) ("the scope of a CBA often goes beyond the explicit terms of the contract and includes 'implied terms' arising from 'practice, usage and custom,'" and therefore any claims plaintiff brought would be preempted to the extent "the CBA itself, in its express and implied terms, necessarily become[] 'inextricably intertwined' in the resolution of the dispute"); *Doucette v. CIM Grp., L.P.*, 2020 WL 30268, at *3 (C.D. Cal. Jan. 2, 2020) ("Plaintiff confuses a claim that is *independent* of the CBA with one properly governed by the CBA despite involving terms or customs not explicitly expressed therein. The latter is pre-empted.") (emphasis in original).[7]

Accordingly, courts routinely find that the RLA preempts state law claims to the extent

---

[7] While *Doucette* arises under the Labor Management Relations Act ("LMRA") rather than the RLA, the standard for RLA preemption "is virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA." *Norris*, 512 U.S. at 260.

they require interpretation of any agreement between a union and RLA employer, regardless of whether they are express or implied. *See, e.g.*, *Monroe*, 115 F.3d at 518 (holding plaintiff's claims were preempted and noting "[a] 'plaintiff's claims are minor disputes if they depend not only on a right found in the CBAs, but also if they implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship") (quoting *Fry*, 88 F.3d at 836)); *Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 332 (3d Cir. 1993) (finding plaintiff's claims preempted and noting "even where neither side relies upon an express provision of the collective bargaining agreement, arbitration is required if either side is advancing a plausible argument based on implied terms evidenced by course and practice under the collective bargaining agreement or the 'common law of the shop.'"). For example, in *Kwasnik v. National Railroad Passenger Corp.*, the court found a plaintiff's state law claim preempted to the extent it would require the court to interpret "an implied term of the collective bargaining agreement, based on past practice." 1997 WL 109977, at *4 (N.D. Ill. Mar. 7, 1997). Similarly, in *Dowaliby v. National Railroad Passenger Corp.*, the Ninth Circuit found plaintiff's state law wrongful termination claims preempted because the employer could rely "solely on implied terms and past practice" to assert its actions were authorized by the parties' collective bargaining agreement. 26 F.3d 130, 130 (9th Cir. 1994) (citing *Conrail*, 491 U.S. at 311).

## B. Seventh Circuit Precedent Establishes That BIPA Claims Brought By Unionized Employees Are Preempted.

In *Miller v. Southwest Airlines*, the Seventh Circuit unequivocally held that BIPA claims brought by unionized airline employees "amount to a 'minor dispute,'" and are thus preempted by the RLA. 926 F.3d at 900. The court found "there can be no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining," and whether those unions "*did* consent to the collection and

use of biometric data … is a question for an adjustment board." *Id.* at 903 (emphasis in original).

The Seventh Circuit further found that "the retention and destruction schedules for biometric

data, and whether air carriers may use third parties to implement timekeeping and identification

systems, are topics for bargaining between unions and management.  States cannot bypass the

mechanisms of the Railway Labor Act and authorize direct negotiation or litigation between

workers and management." *Id.*  The Seventh Circuit drew a direct comparison between "[t]hat

biometric information … [and] many other subjects, such as drug testing, that are routinely

covered by collective bargaining and on which unions give consent on behalf of the whole

bargaining unit." *Id*. at 904.  The court concluded by holding that "[i]t is not possible even in

principle to litigate a dispute about how an air carrier acquires and uses fingerprint information

for its whole workforce without asking whether the union has consented on the employees'

collective behalf.  That's why this dispute must go to an adjustment board." *Id.*

After the Seventh Circuit's decision in *Miller*, "district courts within this circuit have

consistently found that BIPA claims from unionized employees are preempted by federal labor

law." *Roberson v. Maestro Consulting Servs. LLC*, 2020 WL 7342693, at *9 (S.D. Ill. Dec. 14,

2020) (collecting cases); *see also*, *Frisby v. Sky Chefs, Inc*., 2020 WL 4437805, at *2 (N.D. Ill.

Aug. 3, 2020); *Crooms v. Sw. Airlines Co*., 459 F. Supp. 3d 1041, 1049 (N.D. Ill. 2020); *Gil v.

True World Foods Chicago, LLC*, 2020 WL 7027727, at *3 (N.D. Ill. Nov. 30, 2020); *Fernandez

v. Kerry, Inc*., 2020 WL 7027587, at *6 (N.D. Ill. Nov. 30, 2020); *Williams v. Jackson Park SLF*,

*LLC*, 2020 WL 5702294, at *3 (N.D. Ill. Sept. 24, 2020); *Gray v. Univ. of Chicago Med. Ctr.,

Inc*., 2020 WL 1445608, at *5 (N.D. Ill. Mar. 25, 2020).[8]

---

[8] In *Peatry v. Bimbo Bakeries USA, Inc*., in contrast, the employer did not argue it was justified in implementing the challenged time clocks until after it entered into a formal collective bargaining agreement with its union.  2020 WL 919202, at *5 (N.D. Ill. Feb. 26, 2020).  Unlike in *Peatry*, Envoy has established the CWA represented Plaintiff during the entire time at issue and there existed an agreement

Thus, under binding Seventh Circuit precedent, Plaintiff's claim is squarely preempted. Much like the plaintiffs in *Miller*, Plaintiff alleges that Envoy failed to develop a retention schedule and guidelines for permanently destroying Plaintiff's biometric information and failed to follow certain procedural requirements for obtaining Plaintiff's informed consent before taking her biometric information.  (*Compare* Compl. ¶ 4 *with Miller*, 926 F.3d at 901.)  Like Southwest in *Miller*, Envoy has established that its union potentially consented to its use of the timekeeping technology.  Indeed, despite Envoy requiring each CWA-represented employee (including members of the CWA's negotiation team) to use this technology in order to clock-in and -out of work every day, the CWA did not object to, grieve, or otherwise take issue with this practice.  (Clemens Decl. ¶¶ 10-12.)  As such, there is ample evidence establishing that Envoy and the CWA entered into an agreement permitting Envoy to use this timekeeping technology. In addition, the CWA later expressly agreed that individual employee claims relating to the "manner of clocking in and out" must be arbitrated before the System Board regardless of whether they require interpretation or application of a collectively bargained agreement. (Clemens Decl. Ex. 4.)[9]

Crucially, what Envoy "told the union, whether it furnished that information in writing,

---

regarding the use of the technology for the entire relevant time.  Thus, the applicable System Board must interpret and apply that agreement to resolve Plaintiff's BIPA claim, including determining whether the CWA consented as the Seventh Circuit explained in *Miller*.  *Miller*, 926 F.3d at 903.

[9] Moreover, in April 2017, Envoy and the CWA expressly agreed to waive the application of state laws to PSAs "to the extent such Laws permit a waiver, exception or other treatment for employees covered under a collective bargaining agreement."  (*See* Clemens Decl. Ex. 2.)  These agreements demonstrate that the CWA is and was fully aware of how PSAs clock in and out of work and made not only implied agreements regarding those procedures, but also express agreements.  Accordingly, to resolve Plaintiff's BIPA claim, the System Board must also interpret and apply these agreements to determine whether the CWA waived Plaintiff's rights under BIPA altogether or waived Plaintiff's right to a judicial forum (regardless of whether the dispute requires application or interpretation of a collectively bargained agreement), which will require the System Board to decide whether the agreements have retroactive application—as one administrative agency already held as to the July 19, 2019 agreement.  (*See* Clemens Decl. Ex. 5.)

when these things happened, and what the union said or did in response … are *properly* not in this record, as they are topics for resolution by an adjustment board, rather than a judge." *Miller*, 926 F.3d at 904 (emphasis in original). Even if that board eventually concludes "the union did not consent or did not receive essential information before consenting … the board must make that decision"—not this Court. *Id.* As such, this Court lacks subject matter jurisdiction to decide the merits of Plaintiff's claim, and the complaint should thus be dismissed with prejudice.

## II.     The ADA Preempts Plaintiff's Claim.

Alternatively, if this Court were to decline to dismiss Plaintiff's claim based on the above arguments, Plaintiff's claim should be dismissed for failure to state a claim based on ADA preemption. As anyone who has ever flown knows, individuals' privacy interests are greatly diminished at the airport. Passengers are subjected to numerous intrusive security measures, from being required to remove outer layers of clothing, subject to backscatter and millimeter wave scans, and physically patted down by TSA agents. Illinois would be well within its rights to pass a law that prohibited these measures at "grocery stores, gas stations, and school cafeterias"—which are the places that Illinois identified in BIPA as inappropriate places to use biometric information. 740 ILCS 14/5(b). But if Illinois passed such a law prohibiting those security measures at airports, no one would doubt such a law would be preempted.

The result must be the same for BIPA. As Plaintiff alleges, "[b]iometric information," includes "any information based on an individual's biometric identifier that is used to identify an individual." (Compl. ¶ 40.) Plaintiff alleges that she and other Envoy employees have their "'biometric identifier[]' (in the form of their fingerprints and/or handprints) collected by Defendant by way of Defendant's biometric scanner, i.e., time clock," which is "used to identify them." (*Id.* ¶¶ 48-49.) An airline ensuring that an employee working for it at the airport is who they purport to be is no different from the TSA ensuring that a passenger at the airport is who

11

they purport to be. Illinois can enact a general statute that prohibits the use of handprints and fingerprints in most places throughout the state, but that statute cannot apply to Envoy's employees, like Plaintiff, who work at the airport.

### A. The ADA Broadly Preempts State-Law Claims That Relate To Air Carriers' Services.

Congress enacted the ADA "[t]o ensure that the States would not undo federal deregulation" of the airline industry with regulation of their own. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Thus, the ADA expressly preempts state laws "related to … services of an air carrier." 49 U.S.C. § 41713. The Supreme Court has held that "[t]he ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'—and the words thus express a broad pre-emptive purpose." *Morales*, 504 U.S. at 383 (citation omitted); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 238-39 (1995); *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1428-30 (2014); *see also Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996).

The Supreme Court has held that the ADA preempts generally applicable state laws—not just laws targeted specifically toward airlines. In *Morales*, for example, the Attorney General for the State of Texas argued: "only state laws specifically addressed to the airline industry are pre-empted, whereas the ADA imposes no constraints on laws of general applicability." 504 U.S. at 386. The Supreme Court rejected that argument as being "utterly irrational" and held that it "ignores the sweep of the 'relating to' language." *Id.*

### B. The ADA Preempts Plaintiff's Claim Because It Relates To Envoy's Most Important Service: Safe Passenger Transportation.

The primary purposes of the ADA include "the 'maintenance of safety as the highest priority in air commerce' and the 'placement of maximum reliance on competitive market

12

forces.'" *Belgard v. United Airlines*, 857 P.2d 467, 470 (Colo. Ct. App. 1992) (quoting 49 U.S.C. App. § 1302(a)(1) and (4)).  Ensuring passenger safety directly relates to an airline's services, and thus the ADA preempts state laws that affect an airline's ability to ensure passenger safety.  *Id.* (holding the ADA preempted plaintiff's state-law claim because it affected passenger safety).

Plaintiff's BIPA claim not only "relates to" passenger safety—it goes to the heart of it. Plaintiff alleges that Envoy uses employees' biometric data to "identify them."  (Compl. ¶ 49.) Plaintiff concedes that, "biometric information," like handprints and fingerprints, are "used to identify an individual."  (*Id.* ¶ 41.)  Plaintiff specifically alleges that Envoy's system used her biometric information "as a method of identification."  (*Id.* ¶ 66.)  Put another way, Plaintiff alleges that Envoy uses handprint and fingerprint technology to ensure individuals presenting themselves for work at the airport are actually the persons Envoy employs.  The ADA preempts Plaintiff's BIPA claim for similar reasons the Supreme Court found another Illinois statute preempted:  because the ADA preempts "intrusive regulation of airline business practices inherent in state consumer protection legislation."  *Wolens*, 513 U.S. at 227 (holding ADA preempted claims brought under Illinois Consumer Fraud and Deceptive Business Practices Act).

While BIPA is a first-of-its-kind statute dealing specifically with biometric information, it builds upon an established foundation of state laws enacted to protect individuals' right to privacy regarding their personal information—laws which state and federal courts have routinely held are preempted by the ADA.  *See In re American Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 555, 563 (N.D. Tex. 2005); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005); *Copeland v. Nw. Airlines Corp.*, 2005 WL 2365255, at *1 (W.D. Tenn. Feb. 28, 2005) ; *In re Nw. Airlines Privacy Litig.*, 2004 WL 1278459, at *3 (D. Minn. June

13

6, 2004); *The People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884 (2016); *Pena v. British Airways, PLC (UK)*, 2020 WL 3989055, at *5 (E.D.N.Y. Mar. 30, 2020); *see also McGarry v. Delta Air Lines, Inc.*, 2019 WL 2558199, at *6 (C.D. Cal. June 18, 2019). Because biometric information is just another form of personal information, the ADA preempts BIPA, too.

For example, in *In re American Airlines, Inc., Privacy Litigation*, the "[p]laintiffs allege[d] that American [illegally] collects personally-identifiable information" that included their names, addresses, telephone numbers, and passport numbers. 370 F. Supp. 2d at 564. The plaintiffs noted that, "Congress enacted the ADA to ensure, following airline deregulation, that the states would not enact their own forms of economic regulation" and, "Plaintiffs posit that their claims seeking redress for privacy rights violations have no connection to airline competition or economic deregulation of the airline industry." *Id.* at 562. The court rejected that argument, concluding that: "Congress surely intended to immunize airlines from a host of potentially-varying state laws and state-law causes of action that could effectively dictate how they manage personal information." *Id.* at 564.[10]

Similarly, in *In re Northwest Airlines Privacy Litigation*, the plaintiffs brought suit based on the disclosure of "passenger name records" that contained information including their names, credit card data, and their companions' names. 2004 WL 1278459, at *1. The plaintiffs attempted to distinguish *Wolens* by arguing that it "involved an airline's marketing practices, while their claims here involve an airline's privacy policy." *Id.* at *4. The court rejected this

---

[10] That reasoning applies equally here. As with managing personal information, "Congress surely intended to immunize airlines from a host of potentially-varying state laws and state-law causes of action that could effectively dictate how" airlines seek to enhance security regarding their employees working at airports and ensure that employees seeking access to secure areas are actually who they purport to be. *In re American Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d at 564.

argument, holding "[t]his distinction is not persuasive … Plaintiffs' claim that Northwest's failure to abide by its privacy policy when providing services to customers on its website violates the [Deceptive Trade Practices Act ("DTPA")] is strikingly similar to the plaintiffs' claims in" *Wolens* because "Plaintiffs' claims under the DTPA at least relate to Northwest's services and are preempted by the ADA." *Id.* The same reasoning applies here and the result should be the same.

Accordingly, in the alternative, this Court should dismiss Plaintiff's Complaint for failure to state a claim based on ADA preemption.

## CONCLUSION

Plaintiff's Complaint should be dismissed based on one of these two alternative grounds.

Dated: January 27, 2021

Respectfully submitted,

By: /s/Mark W. Robertson
Mark W. Robertson
(*admitted pro hac vice*)
Sloane Ackerman
(*admitted pro hac vice*)
Charles J. Mahoney
(*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: mrobertson@omm.com
        sackerman@omm.com
        cmahoney@omm.com

Larry S. Kaplan (ARDC # 1398717)
KMA ZUCKERT LLC
200 West Madison Street, 16th Fl.
Chicago, Illinois 60606
Telephone: (312) 345-3000
Fax: (312) 345-3119
E-mail: lkaplan@kmazuckert.com

*Attorneys for Defendant Envoy Air, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on January 27, 2021, pursuant to Fed. R. Civ. P. 5 and LR 5.5, a true and correct copy of the foregoing Memorandum in Support of Envoy Air, Inc.'s Motion to Dismiss Plaintiff's Complaint was filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the attorneys of record at the email addresses on file with the court.

/s/Mark W. Robertson
Mark W. Robertson