## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MAYSOUN ABUDAYYEH and CHELSEA BURROW, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:21-cv-00142 |
| v. | |
| ENVOY AIR, INC., | Judge Andrea R. Wood<br>Magistrate Judge Heather K. McShain |
| Defendant. | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Maysoun Abudayyeh ("Abudayyeh") and Chelsea Burrow ("Burrow") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "putative BIPA Class"), by and through their attorneys, Fish Potter Bolaños, P.C. and Caffarelli & Associates, Ltd., complain against Defendant Envoy Air, Inc. ("Envoy" or "Defendant") as follows:

### NATURE OF ACTION

1.      This is a class action under the Biometric Information Privacy Act, 740 ILCS 14/l, *et seq.* ("BIPA") on behalf of all persons who had their biometric information and/or biometric identifiers, including but not limited to handprints and/or fingerprints, improperly collected, captured, or otherwise obtained and/or retained by Defendant in Illinois prior to June 29, 2016.

2.      Individuals who perform work at Defendant's facilities in Illinois have been required to place their finger and at times, a hand, on Defendant's biometric time clocks. That is because Defendant uses a biometric time tracking system that requires workers to use their fingerprint and/or handprint as a means of authentication.

3.      Illinois enacted the BIPA as an informed consent statute, specifically imposing safeguards to (a) ensure that individuals' privacy rights and control over their biometric identifiers and biometric information are properly honored and protected, and (b) subject private entities who fail to follow the statute's requirements to substantial potential liability.

4.      Defendant disregarded workers' statutorily protected rights and unlawfully collected, stored, and used their biometric data in violation of the BIPA.  Specifically, Defendant has committed at least four distinct violations of BIPA because it did not:

    a. Develop a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and the putative BIPA Class's fingerprints and/or handprints, or any biometric information derived therefrom, as required by the BIPA;

    b. Properly inform Plaintiffs and putative BIPA Class members in writing that their biometric information or identifiers were being collected;

    c. Properly inform Plaintiffs and the putative BIPA Class members of the specific purpose and length of time for which their fingerprints, handprints, and/or biometric information were being collected, stored, and used, as required by the BIPA; nor

    d. Receive a prior written authorization from Plaintiffs or the members of the putative BIPA Class to collect, capture, or otherwise obtain their fingerprints, handprints, and/or biometric information as required by the BIPA.

## PARTIES

5.      Plaintiff Maysoun Abudayyeh is an adult resident of Chicago, Illinois and worked for Defendant at O'Hare International Airport located in Chicago, Cook County, Illinois from in or about July 2000 through February 13, 2017, and June 29, 2017 through September 2017.

6.      Plaintiff Chelsea Burrow is an adult resident of Chicago, Illinois and worked for Defendant at O'Hare International Airport located in Chicago, Cook County, Illinois from in or about November/December 2015 through October 2016.

7.      Envoy is a Delaware corporation registered to conduct business within the State of Illinois.  Defendant is a regional commercial airline that operates throughout the United States, including in multiple facilities throughout the State of Illinois.

8.      Upon information and belief, at least 1,000 individuals performed work for Defendant in the State of Illinois.  Defendant collects, captures, and/or otherwise obtains biometric identifiers and/or biometric information from these individuals through its timekeeping system.

## JURISDICTION AND VENUE

9.      This case was removed from the Circuit Court of Cook County, Illinois pursuant to Notice of Removal filed on January 8, 2021. Dkt 1.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts business transactions in Illinois, and has committed unlawful acts in Illinois.

11.     Additionally, this Court has jurisdiction over Plaintiffs because they are residents of the state of Illinois.

12.     Defendant maintains offices and conducts business in Chicago, Cook County, Illinois; therefore, venue is proper.

## FACTUAL ALLEGATIONS

13.     Plaintiff Abudayyeh was employed by Envoy as a Passenger Service Agent ("PSA") from in or about July 2000 through February 13, 2017, and from June 29, 2017 through September 2017.

14.     Plaintiff Burrow was employed by Envoy as a Compliance Coordinator/Ground Security Coordinator ("GSC") from in or about November/December 2015 through October 2016.

15.     Throughout the past five years, Plaintiffs, and all other members of the putative BIPA Class, were required to have their fingerprints (and at times their handprint) collected

3

and/or captured so that Defendant could store it and use it moving forward as a method of identification to record their hours of work.

16.     Defendant initially implemented timeclocks that required Plaintiffs and members of the putative BIPA class to key in their employee ID numbers and place solely their fingertips on a panel to be scanned.

17.     Defendant subsequently installed different biometric timeclocks that required Plaintiffs and members of the putative BIPA class to place their entire hand on a panel to scan their fingerprints or handprints. Because Defendant never provided Plaintiffs with information regarding how the time clocks functioned and she was required to place their entire hand on the panel, she is not certain if the clocks still captured only their fingerprints or if it also captured their handprint.

18.     Upon information and belief, Defendant failed to develop a written policy establishing a retention schedule and guidelines for permanently destroying biometric information and biometric identifiers.

19.     Defendant did not make publicly available any written policy concerning a retention schedule or guidelines for permanently destroying biometric information and biometric identifiers.

20.     Defendant failed to provide Plaintiffs or, upon information and belief, any member of the putative BIPA class, with information about its policies or practices.

21.     Each day, Plaintiffs, and the putative BIPA Class members, were each required to place their fingerprint and/or hand on a panel to be scanned in order to 'clock in' and 'clock out' of work.

22.     By scanning Plaintiffs' fingerprint and/or handprint, and the fingerprints and/or handprints of the putative BIPA Class members, Defendant was collecting, capturing, and otherwise obtaining their biometric information and/or biometric identifiers.

23.     Defendant failed to provide Plaintiffs or, upon information and belief, any member of the putative BIPA Class, with written notice of the fact that it was collecting, storing, and using their biometric information and/or identifiers prior to collecting, capturing, or otherwise obtaining biometric information and/or identifiers.

24.     Defendant failed to obtain prior written consent or any form of written release from Plaintiffs or, upon information and belief, any putative BIPA Class member before it collected, captured, obtained, stored, or used those individuals' biometric information.

25.     Defendant did not inform Plaintiffs or, upon information and belief, any putative BIPA Class member, of the specific purposes or length of time for which it collected, stored, or used their fingerprints, handprints, and/or biometric information.

26.     Defendant did not inform Plaintiffs of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Defendant will ever permanently delete their fingerprints and/or biometric information.

27.     Plaintiffs were not provided with nor ever signed a written release allowing Defendant to collect, capture, obtain, store, or use their fingerprints, handprints, and/or biometric information.

28.     On November 25, 2015, the National Mediation Board certified that the Communications Workers of America, AFL-CIO ("the Union") had been duly designated and authorized to represent the craft or class of Passenger Service Employees, employees of Envoy.

29.     Shortly thereafter, the Union and Envoy began negotiating an initial collective

bargaining agreement.

30. During their negotiations, Envoy and the Union entered into two interim agreements. First, on June 29, 2016, the two adopted an interim grievance procedure ("IGP") for Envoy employees.

31. Then, on April 26, 2017, Envoy and the Union entered into an interim agreement ("Interim Agreement") setting rates of pay for PSAs and adopting four other, separate agreements concerning the purpose of the Interim Agreement, discipline and discharge, grievance procedures, and the establishment of the Envoy System Board of Adjustment.

32. Finally, on August 15, 2019, Envoy and the Union executed their final collective bargaining agreement ("Final Agreement") governing the terms and conditions of employment for Envoy's PSAs.

33. Prior to June 29, 2016, there was no grievance procedure controlling the terms of employment for Plaintiffs or the members of the putative BIPA Class.

34. Prior to August 15, 2019, there was no collective bargaining agreement controlling the terms of employment for Plaintiffs or the members of the putative BIPA Class.

35. Upon information and belief, Plaintiffs' experiences as described above are typical and representative of the experiences of the putative BIPA Class.

## CLASS ALLEGATIONS

36. Upon information and belief, the practices, policies, and consequences pertinent to Defendant's biometric system as described above applied to each member of the putative BIPA Class.

37. Upon information and belief, Defendant employs at least 1,000 individuals in Illinois who are similarly situated persons and potential Class members.

38.    **Class Definition:** Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a BIPA Class of similarly situated individuals, defined as follows:

> **All individuals who worked for Envoy and who had their fingerprints and/or handprints and/or biometric identifiers and/or biometric information collected, captured, received, otherwise obtained, used, stored, or possessed by Envoy in the State of Illinois prior to June 29, 2016.**

39.    **Numerosity:** The exact number of Class members is unknown to Plaintiffs at this time, but upon observation, information and belief, it is at least 1,000 individuals, making individual joinder impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least 1,000 people who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

40.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a.    whether Defendant collected, captured, or otherwise obtained Plaintiffs' and the Class's biometric identifiers and/or biometric information;

b.    whether Defendant properly informed Plaintiffs and the Class in writing of their purposes for collecting, using, and/or storing their biometric identifiers or biometric information;

c.    whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and the Class's biometric identifiers or biometric information;

d.    whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information was satisfied or within three years of their last interaction, whichever occurs first;

     e.      whether Defendant complies with any such written policy (if one exists);

     f.      whether Defendant used Plaintiffs' and the Class's fingerprints and/or handprints and/or biometric identifiers and/or biometric information to identify them; and

     g.      whether Defendant's violations of the BIPA were committed negligently or recklessly.

41.   **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiffs are adequate representative of the Class because all potential plaintiffs were subject to Defendant's uniform policies and practices, and Plaintiffs worked at Defendant's locations. Plaintiffs and their counsel are committed to vigorously prosecuting their action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel has any interest adverse to those of the other members of the Class.

42.   **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies

presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### COUNT I – BIOMETRIC INFORMATION PRIVACY ACT
### (Class Action)

43.     Plaintiffs restate and incorporate the foregoing allegations as though fully set forth herein.

44.     BIPA is an informed consent statute that achieves its goal of protecting individuals' privacy rights by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information," unless *it first:*

> (1)     informs the subject in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2)     informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3)     receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

45.     In the employment context, a "written release" means "a release executed by an employee as a condition of employment." 740 ILCS 14/10.

46.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an

individual. *See id.*

47.     BIPA also established standards for how companies must handle individuals'
biometric identifiers and biometric information, as follows: "[a] private entity in possession of
biometric identifiers or biometric information must develop a written policy, made available to the
public, establishing a retention schedule and guidelines for permanently destroying biometric
identifiers and biometric information when the initial purpose for collecting or obtaining such
identifiers or information has been satisfied or within 3 years of the individual's last interaction
with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a
court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric
information must comply with its established retention schedule and destruction guidelines." 740
ILCS 14/15(a).

48.     Ultimately, BIPA is simply an informed consent statute, which mandates that
entities wishing to collect, store, and/or use biometric information must put in place certain
reasonable safeguards to protect individuals' privacy. *See* 740 ILCS 14/15.

49.     BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive
through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric
information, unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier
or biometric information is being collected or stored; (2) informs the subject in writing of the
specific purpose and length of term for which a biometric identifier or biometric information is
being collected, stored , and used; and (3) receives a written release executed by the subject of the
biometric identifier or biometric information." 740 ILCS 14/15(b).

50.     BIPA also mandates that companies in possession of biometric data establish and
maintain a satisfactory biometric data retention (and – importantly – deletion) policy. Specifically,

those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (e.g. when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/1 5(a).

51.     Defendant failed to comply with BIPA mandates, thus committing at least four distinct violations of BIPA with respect to Plaintiffs and each putative BIPA Class member.

52.     Defendant's failure to comply with BIPA mandates was negligent and/or reckless.

53.     Defendant qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

54.     Plaintiffs and the BIPA Class members are individuals who had their "biometric identifiers" (in the form of their fingerprints and/or handprints) collected by Defendant by way of Defendant's biometric scanner, i.e. time clock. *See* 740 ILCS 14/10.

55.     Plaintiffs' and the BIPA Class's biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

56.     Defendant violated 740 ILCS 14/15(a) by failing to develop or publicly provide a retention schedule or guideline for permanently destroying biometric identifiers and biometric information it collected from Plaintiffs and the Class.

57.     Defendant violated 740 ILCS 14/15(b)(l) by failing to inform Plaintiffs and the BIPA Class in writing that their biometric identifiers and/or biometric information were being collected and stored.

58.     Defendant violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiffs and the BIPA Class in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and/or used.

59.     Defendant violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from

Plaintiffs and the BIPA Class before it collected, used, and/or stored their biometric identifiers and biometric information.

60.     For each of the violations identified above, Plaintiffs and the members of the putative BIPA Class are entitled to recover anywhere from $1,000 to $5,000 in statutory damages.

61.     Therefore, Defendant violated Plaintiffs' and the Class's rights to control of their biometric identifiers and biometric information, and committed actionable statutory violations of BIPA. 740 ILCS 14/1, *et seq.*; *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186, 2019 WL 323902 (Ill. Jan. 25, 2019).

WHEREFORE, Plaintiffs Maysoun Abudayyeh and Chelsea Burrow, individually and on behalf of other similarly situated individuals, respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendant Envoy Air, Inc. and grant them the following relief:

a)     Certifying this case as a class action on behalf of the BIPA Class defined above, appointing Plaintiffs as representatives of the BIPA Class, and appointing their counsel as Class Counsel;

b)     Awarding injunctive and other equitable relief as is necessary to protect the interests of the BIPA Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

c)     Awarding statutory damages to each person whose rights were violated under BIPA, pursuant to 740 ILCS 14/20;

d)     Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees and costs;

e)     Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

f)     Any further relief that is deemed just and equitable.

Dated: September 16, 2021

Robin Potter
M. Nieves Bolaños
Patrick Cowlin
Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
Tel. (312) 861-1800
*rpotter@fishlawfirm.com*
*nbolanos@fishlawfirm.com*
*pcowlin@fishlawfirm.com*

David Fish
Mara Baltabols
Fish Potter Bolaños PC
200 E. 5th Avenue, Suite 123
Naperville, IL 60653
Tel. (312) 861-1800
*dfish@fishlawfirm.com*
*mara@fishlawfirm.com*

Alejandro Caffarelli
Alexis D. Martin
Caffarelli & Associates Ltd.
224 S. Michigan Ave., Ste. 300
Chicago, Illinois 60604
Tel. (312) 763-6880
*acaffarelli@caffarelli.com*
*amartin@caffarelli.com*

Respectfully submitted,

MAYSOUN ABUDAYYEH and CHELSEA BURROW, individually and on behalf of all others similarly situated,


By: /s/ Mara Baltabols
     One of Plaintiffs' Attorneys

13