# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAYSOUN ABUDAYYEH, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:21-cv-00142 |
| v. | Judge Andrea R. Wood |
| ENVOY AIR, INC., | Magistrate Judge Heather K. McShain |
| Defendant. | |

## PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Alejandro Caffarelli
Alexis D. Martin
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880
*acaffarelli@caffarelli.com*
*amartin@caffarelli.com*

Robin Potter
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*rpotter@fishlawfirm.com*
*mbaltabols@fishlawfirm.com*

*Attorneys for Plaintiff and
Others Similarly Situated*

I.  **Introduction**

Plaintiff and proposed class representative Maysoun Abudayyeh ("Plaintiff" or "Class Representative") is a former Illinois employee of Defendant Envoy Air, Inc. ("Defendant" or "Envoy"). Defendant is a regional commercial airline that operates throughout the United States, with facilities in the State of Illinois. In this lawsuit, Plaintiff alleges that Defendant violated the Illinois Biometric Information Privacy Act ("BIPA") by collecting, possessing, storing, and using its Illinois employees' biometric data through a handpunch timekeeping system without following BIPA's written disclosure and consent requirements. After successful settlement conference with Magistrate Heather K. McShain, the Parties reached a **non-reversionary** $300,000 class settlement for the 350 Settlement Class Members. This is a strong result for the Class as a whole and is structured to maximize the number of individuals who will receive a settlement payment: each Class Member will automatically receive a payment unless he or she opts out. Because the settlement is fair, reasonable, adequate, and meets all requirements under Rule 23, the Court should grant preliminary approval and enter the Parties' proposed order.[1]

II.  **Procedural History**

On December 23, 2020, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, Chancery Division, alleging that Envoy violated BIPA by requiring her and other employees to use a biometric timekeeping system as part of their jobs. D.E. 1-1. In particular, Plaintiff alleged that Envoy violated BIPA by failing to do four things:

1) Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;

2) Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information was being collected, stored, and used, as

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Class Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), which is Exhibit 1.

1

    required by BIPA;

3) Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA; nor

4) Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA.

On January 8, 2021, Envoy removed the lawsuit to the United States District Court for the Northern District of Illinois. D.E. 1. On January 27, 2021, Envoy filed its first Motion to Dismiss the Original Complaint for lack of subject matter jurisdiction on the argument that Plaintiff's claims were preempted by the Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA") and the Airline Deregulation Act, 49 U.S.C. § 41713, et seq. ("ADA"). D.E. 14, 15. Plaintiff sought to depose Envoy's declarant, Renae Clemens, in connection with the Motion, which the Court ultimately denied. D.E. 21, 23. The Court stayed discovery during the pendency of Defendant's Motion to Dismiss, but for the exchange of initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). D.E. 21. In compliance with the Court's order the parties exchanged their initial disclosures by February 26, 2021 and, as Plaintiff had requested, Defendant included documents related to the jurisdictional arguments raised in the Motion to Dismiss. Id. On August 3, 2021, the Court issued an opinion on Defendant's Motion to Dismiss, granting it in part and denying it in part. D.E. 28, 29. The Court held that the ADA does not preempt BIPA and that Plaintiff's BIPA claims for Defendant's violations prior to any written agreement with the union, i.e. before the June 29, 2016 agreement, could proceed because they were not preempted by the RLA, but dismissing Plaintiff's claims to the extent they were based on conduct occurring after that date finding them preempted. D.E. 29.

On September 16, 2021, Plaintiff Abudayyeh amended her complaint to add an additional class representative and to reflect the class period of December 23, 2015 through June 29, 2016, in accordance with Court's Memorandum Opinion and Order. D.E. 29, 42. On October 7, 2021,

2

Defendant filed a Rule 12(b)(1) Motion to Dismiss the Amended Complaint, renewing their argument that Plaintiff's claims were preempted by the RLA based upon other purported union agreements and that determining whether they were intended to apply retroactively would require interpretation of the agreements. The Parties fully briefed Defendant's Motion to Dismiss the Amended Complaint. D.E. 55-56.

Following briefing of the second Motion to Dismiss and engaging in written discovery, the Parties agreed to participate in settlement discussions and scheduled a settlement conference with Magistrate Judge McShain. In advance of settlement conference, the Parties exchanged mediation statements with the relevant legal and factual arguments for their respective positions in the case. Additionally, on June 28, 2022, by agreement, Plaintiff entered a stipulated dismissal of Chelsea Burrow from the case. D.E. 74. On June 29, 2022, the Parties participated in a day-long mediation with Judge McShain and, following several more days of additional deliberation with the assistance of the of the Magistrate, were able to reach a settlement. D.E. 76.

### III. Summary of Settlement Terms (Ex. 1, Settlement Agreement)[2]

#### A. The Proposed Settlement Class (Ex. 1, Settlement Agreement, § 1.2)

The proposed Settlement Class includes a maximum total of 350 identified individuals who worked for Envoy as passenger service agents or were non-union employees at O'Hare during the class period and who used handpunch and/or fingerscan timeclocks in conjunction with their employment. The Class is limited to O'Hare because Envoy did not utilize handpunch and/or fingerscan timeclocks at any other facilities in Illinois during the relevant time period. Envoy asserts, and provided evidence to demonstrate, that those Class Members who were still employed

---

[2] Citations to the Settlement Agreement are in the headings of this Memorandum to avoid unnecessary multiplication of in-text citations.

by Envoy as of February 25, 2022 had entered into a binding arbitration agreement and released their BIPA claims in exchange for consideration in the form of additional time off. As a result, Plaintiff negotiated relief for the Class in the form of two groups: Subclass 1 consisting generally of those who were no longer employed with Envoy as of February 25, 2022, and Subclass 2 consisting of those who were employed with Envoy as of February 25, 2022.

The Class Representative seeks preliminary approval of a Settlement Class consisting of the following subclasses:

> Subclass 1: The 192 former Envoy passenger service agents ("PSAs") who worked at O'Hare International Airport ("O'Hare") and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were no longer employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline. In addition, Subclass 1 shall include the 24 current and former Envoy non-union management and support staff employees who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

> Subclass 2: The 134 current and former Envoy PSAs who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were still employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

### B. Settlement Fund; Allocation of the Fund; Payments to Class Members (Ex. 1, Settlement Agreement, §§ 1.9, 3.1)

While denying all liability and wrongdoing, Defendant has agreed to pay a Gross Settlement Fund of $300,000 to resolve the claims in this case on a class action basis. The Gross Settlement Fund is the maximum amount Defendant shall be obligated to pay under the Settlement and is allotted solely for the 350 individuals identified in the Class List produced on June 15, 2022. Only those individuals shall be bound by the Settlement Agreement. The "Net Fund" is the Gross Settlement Fund minus the following deductions, approved Class Counsel fees and litigation costs; the Settlement Administrator's costs; and the Class Representative's Enhancement Award. The Net Fund shall be distributed pro rata to Class Members ("Settlement Class Participants").

4

Of the Gross Settlement Fund, 90% is allocated for payments to Subclass 1, which equates to payments in the gross amount of $1,250 per person. Of the Gross Settlement Fund, 10% is allocated for payments to Subclass 2, which equates to payments in the gross amount of $223.88 per person. After all deductions are made, Subclass 1 members are estimated to receive a check in the net amount of $757.98, and Subclass 2 members are estimated to receive a check in the net amount of $120.67. Unless they exclude themselves, all Class Members will automatically receive a settlement check. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate.

    **C.**    **Uncashed Checks Will Be Distributed to a *Cy Pres* Recipient (Ex. 1, Settlement Agreement, § 3.4)**

Under the terms of the Settlement, the entire Gross Settlement Amount will be distributed and **no portion of it shall revert** to the Defendant. Settlement Class Participants will have 125 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to the Legal Aid Chicago as a *cy pres* recipient.

    **D.**    **Release of Claims (Ex. 1, Settlement Agreement, §§ 1.23, 1.24)**

Class Members who do not exclude themselves will release the Releasees, as defined in the Settlement Agreement, from all claims relating to Plaintiff's or the Class Members' biometric information while employed at Envoy, including by way of example, any claims arising out of or relating to Defendant's storage, collection, capture, purchase, sale, disclosure, or other handling of biometric identifiers or biometric information based on any act or omission occurring from the beginning of time up through the date of Plaintiff's execution of the Settlement Agreement.

    **E.**    **Settlement Administration (Ex. 1, Settlement Agreement, § 1.28.)**

The Parties have selected Analytics, LLC to act as the Settlement Administrator. The Settlement Administrator's costs are estimated at $7,308.

**F.      Notice of Class Action Settlement (Ex. 1, Settlement Agreement, § 1.14, Ex A)**

Among other things, the proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how to request payment, exclusion, or submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Enhancement Award; and (6) the Final Approval Hearing details.

The Settlement website, anticipated to be www.fishlawfirm/envoy, will also have the Notice and the Settlement Agreement, the Preliminary Approval Order, the Motion for Attorney Fees, Costs, and Settlement Class Representative's Enhancement Award (once available), the Motion for Final Approval (once available), and the Final Approval Order (once available).

**G.      Distribution of Notice (Ex. 1, Settlement Agreement, § 2.4)**

The Settlement Administrator will implement a robust class notice program to ensure that Settlement Class Members learn of their rights in the Settlement. The program will include two methods of notice distribution and a Settlement website.

First, the Settlement Administrator will provide the Notice by direct mail. Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address database. For Settlement Class Members whose notices are returned as undeliverable without a forwarding address, the Settlement Administrator shall promptly run a database search to locate an updated address and shall promptly mail the Notice to the updated address. Second, where email addresses are available for Settlement Class Members, the Settlement Administrator shall send the Notice by email. Third, Class Counsel will set up the Settlement website and post the Notice and documents related to the Settlement.

### H. Enhancement Award (Ex. 1, Settlement Agreement, § 3.3)

Under the Settlement Agreement, Class Counsel may request that the Court award the Class Representative up to $10,000 as an Enhancement Award for her work in prosecuting this lawsuit on behalf of the Settlement Class, answering written discovery, and recovering money for the Settlement Class. Class Counsel will file the request for the Enhancement Award with their motion for attorney fees and costs, described below.

### I. Attorneys' Fees and Litigation Costs (Ex. 1, Settlement Agreement, § 3.2)

Under the Settlement Agreement, Class Counsel may request that the Court award them up to 40% of the Gross Settlement Fund as attorney fees plus their litigation costs. Class Counsel will file the request for attorneys' fees and litigation costs at least ten days before the Fairness Hearing.

## IV. The Court Should Grant Preliminary Approval

### A. Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;
(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* With this Motion, Plaintiff requests that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

"Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 05-md-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

### B. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Class Counsel and the Class Representative pursued this case vigorously on behalf of a potential class. Throughout nearly two years of litigation, Class Counsel engaged in extensive motion practice and written discovery. Through written discovery and further negotiated exchange of information, Class Counsel obtained all of the relevant documents from Defendant for purposes of evaluating and resolving these claims. As a result of Class Counsel's and the Class Representative's sustained effort, the parties reached a Settlement that makes meaningful monetary relief available to Class Members, with an appropriately tailored release of claims.

#### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel experienced in BIPA litigation and with the assistance of the Magistrate Judge.

### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

This Settlement here exceeds other approved BIPA class settlements:

| Case | Judge | Date | Class Size | Per Class Member | Attorney Fees |
|---|---|---|---|---|---|
| *Kusinski v. ADP, LLC*, 17-CH-12364 (Cir. Ct. Cook Cty.) | Atkins | Feb. 10, 2021 | 320,000 | $250 net (assuming a 20% claims rate)[3] | 35% of total settlement |
| *Zhirovetskiy v. Zayo Group, LLC,* 17-CH-09323 (Cir. Ct. Cook Cty.) | Flynn | Apr. 8, 2019 | 2,475 | $450 gross | 40% of total settlement |
| *Marshall v. Life Time Fitness, Inc.*, 17-CH-14262 (Cir. Ct. Cook Cty.) | Tailor | Aug. 7, 2019 | 6,000 | $270 net[4] | One-third of total settlement |
| *Prelipceanu v. Jumio Corp.*, 18-CH-15883 (Cir. Ct. Cook Cty.) | Mullen | July 21, 2020) | Thousands | $262.28 net[5] | 40% of total settlement |

The Settlement also represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement of 12.2% of damages, citing a study by Columbia University Law School determining that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (cites omitted).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

---

[3] While Plaintiffs estimated this claims rate in their filings, the Final Approval Motion stated the claims rate was 12.5 percent.

[4] The settlement also included dark web monitoring that the parties valued at $130 per class member.

[5] The Parties' settlement agreement and filings did not disclose the number of class members in this $7 million settlement or the ultimate net per person recovery. Class Counsel's fee petition represented that "thousands" of class members had filed claims. Legal websites state that class members who submitted claims received up to $262.28 per person. *See* https://topclassactions.com/lawsuit-settlements/lawsuit-news/illinois-jumio-biometric-class-action-settlement/ (last visited Apr. 12, 2021).

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. Defendant continued to argue that Class Members' claims were preempted. Defendant had filed the Motion to Dismiss the Amended Complaint challenging that every Class Members' claims were preempted regardless of when they began using the timeclock, and the subject union agreement applied retroactively to their claims. Plaintiff opposed the second Motion to Dismiss, however, negotiated this Settlement in consideration of the risks of continued litigation.

Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Settlement Class Members now.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail and, where available, email. Ex. 1, Settlement Agreement, § 2.4.c. Combined with a Settlement website, this is a comprehensive notice program that rivals those implemented in similar settlements. Class Members do not have to take any affirmative steps in order to receive a settlement payment. All Class Members will be mailed a check so long as they do not elect to exclude themselves from the settlement. The Settlement Administrator will distribute funds to Settlement Class Participants via check to their last known mailing address.

### c. The terms of the proposed attorney fee award, including timing of payment

Settlement Class Counsel will seek an award of attorney fees of up to 40% of the Gross Settlement Fund plus litigation costs. Ex. 1, Settlement Agreement § 3.2. The requested fee is equal to or below the fees awarded in similar BIPA class settlements. *See* BIPA Settlement Chart, at 9-10, *supra*. And the Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Settlement Class Counsel. Ex. 1, Settlement Agreement § 3.2.b.

### d. Any Agreement required to be identified under Rule 23(e)(3)

The Settlement Agreement is Exhibit 1 to this Motion. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

### 4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by distributing awards to Settlement Class Participants from the Net Settlement Fund on a *pro rata* basis based on their Subclass. Ex. 1, Settlement Agreement, § 3.2. Subclass 2 may be subject to additional defenses, including that their claims are preempted and/or that they provided consent through the February 25, 2022 agreement with their union. Furthermore, the members of Subclass 2 received an additional benefit through additional time off work. Therefore, members of Subclass 1 receive a larger settlement payment to offset the additional benefits received and applicable risks to the members of Subclass 2.

## C. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiff must demonstrate that her claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

#### a. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 350, Ex. 1, Settlement Agreement, § 3.1, which satisfies numerosity.

#### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. In *Wal-Mart*

11

*Stores, Inc. v. Dukes*, the Supreme Court summarized the Rule 23(a)(2) requirement as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendant collect, possess, or disclose the biometric data without following BIPA's notice and consent requirements? Answering this common question resolves liability for all Class Members. Thus, commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted)).

The claims of the Settlement Class Representative and Settlement Class Members arise from the same conduct: Defendant's alleged use of a biometric timekeeping system for its Illinois employees who worked at O'Hare allegedly without following BIPA's notice and consent requirements. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that she is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs.,*

12

*L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

### i. The Class Representative has an interest in the litigation and has no conflict with Class Members

The Class Representative alleges the same claims as Class Members and has no interests antagonistic to them. Thus, the Class Representative has "a clear stake in a successful outcome – [] damages for [herself] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). Ms. Abudayyeh has taken an active role in pursuing this claim for nearly two years. She has exhibited competence by answering written discovery and regularly provided information to her attorneys. Ms. Abudayyeh assisted in any way that she was asked, engaging in many interviews and reviews of information with her attorneys.

### ii. Class Counsel is experienced and qualified

Settlement Class Counsel will also fairly and adequately protect the interests of the Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including other BIPA class actions. Ex. 2, Caffarelli Declaration; Ex. 3, Baltabols Declaration. In this case, Class Counsel demonstrated commitment to the Class by completing complex briefing and analysis along with written discovery. By their actions and experience, Class Counsel are well-positioned to protect the interests of the Class.

13

### 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

#### a. Common questions predominate

The Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiff bears the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy? The common question predominating in this case is whether Defendant collected, possessed, stored, and/or used Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendant's liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

#### b. A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true

14

in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . .in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is a myriad of individual lawsuits for recoveries possibly less than $1,000, plus attorneys' fees and costs.

### D. Plaintiffs' Notice Program and Class Notice Form Merit Approval (Ex. 1, Settlement Agreement, § 2.4.c and Exhibit A)

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).Fed. R. Civ. P. 23(c)(2)(B).

The plan for the Settlement Administrator to distribute Notices directly to Settlement Class Members by U.S. mail and, when possible, via email, is reasonable.

### V. Conclusion

Because the Settlement makes significant monetary relief available to Settlement Class Members who might have recovered nothing without the Settlement, the Court should grant preliminary approval and enter the proposed Preliminary Approval Order, which will be submitted to the Court via its proposed order email address.

Dated: September 14, 2022

    Respectfully submitted,

    /s/ Mara Baltabols
    One of Plaintiff's Attorneys

Alejandro Caffarelli
Alexis D. Martin
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880
*acaffarelli@caffarelli.com*
*amartin@caffarelli.com*

Robin Potter
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*rpotter@fishlawfirm.com*
*mbaltabols@fishlawfirm.com*

*Attorneys for Plaintiff and Others Similarly Situated*

16

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on September 15, 2022, which will serve a copy on all counsel of record.

/s/      Mara Baltabols