# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is entered into by and between Plaintiff Maysoun Abudayyeh ("Plaintiff"), on behalf of herself and the Class of individuals that she seeks to represent for settlement purposes only and Defendant Envoy Air, Inc. ("Envoy" or "Defendant"). Plaintiff, Class Counsel, and Defendant stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Plaintiff and the Class Members in the action entitled *Maysoun Abudayyeh, individually and on behalf of all others similarly situated v. Envoy Air, Inc.*, in the U.S. District Court for the Northern District of Illinois, Case No. 21-cv-00142 (the "Litigation") shall be fully and completely settled, compromised, and released upon the terms and conditions contained in this Agreement.

## RECITALS

WHEREAS, Plaintiff filed this putative class action litigation against Defendant on December 23, 2020, in the Circuit Court of Cook County, asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), and on January 8, 2021, Defendant removed it to the United States District Court for the Northern District of Illinois;

WHEREAS, this case is pending in the Northern District, Case No. 21-CV-00142;

WHEREAS, Plaintiff seeks recovery on a class basis of, among other things, liquidated damages under BIPA and an award of attorneys' fees, costs, and expenses;

WHEREAS, Defendant denied and continues to deny any wrongdoing or liability associated with the allegations and claims asserted by Plaintiff and Class Members in the Litigation;

WHEREAS, Plaintiff asserts that her individual and class claims have merit;

WHEREAS, on June 29, 2022, the Parties participated in a settlement conference with Magistrate Judge Heather McShain in Chicago, Illinois. After the settlement conference, and following additional deliberation, the Parties were able to reach agreement on all the material terms of a settlement, which were agreed to by the Parties in a Settlement Term Sheet executed on July 27, 2022, and is memorialized in this Agreement;

WHEREAS, Plaintiff and Class Counsel have agreed to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the burden and expense of continuing the Litigation and the uncertain outcome as to unsettled factual and legal issues pertaining to BIPA;

WHEREAS, this Agreement resulted from and is the product of good faith and arm's length negotiations and settlement discussions over the course of nearly two years of litigation, written fact discovery, motion practice, negotiations, and mediation;

WHEREAS, as a result of these efforts, the Parties enter into this Agreement, subject to preliminary approval and final approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, to fully, finally, and forever resolve, discharge, and release all rights and claims

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

of Plaintiff and the Class Members in exchange for Defendant's agreement to pay into a common fund a total amount of $300,000 as set forth below;

WHEREAS, Class Counsel has conducted an extensive analysis of the instant claims, the viability of same, similar claims brought alleging BIPA violations, and have weighed such claims against the possible outcomes of unsettled matters of law under BIPA;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiff and the Class;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain defenses, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Class, and that would not occur for several years, or at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiff and the Class; and

WHEREAS, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of all claims and defenses asserted in the Litigation. It is the Parties' desire and intention to affect a full, complete, and final settlement and resolution of all disputes and claims as set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for in this Agreement, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.     DEFINITIONS

The defined terms set forth in this Agreement shall have the meanings ascribed to them below or in the preamble.

**1.1     Agreement**. "Agreement" shall mean this Settlement Agreement and Release, and all exhibits.

**1.2     Class; Class Members; Settlement Class**. "Class," "Class Members," and "Settlement Class" shall mean and refer collectively to the following two subclasses:

Subclass 1: The 192 former Envoy passenger service agents ("PSAs") who worked at O'Hare International Airport ("O'Hare") and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were no longer employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline. In addition, Subclass 1 shall include the 24 current and former Envoy non-union management and support staff employees who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

Subclass 2: The 134 current and former Envoy PSAs who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were still employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

1.3    **Class Counsel**.  "Class Counsel" shall mean Fish Potter Bolanos, LLC, 200 E. 5th Avenue, S. 123, Naperville, IL. 60563 and Caffarelli & Associates Ltd., 224 South Michigan Avenue, Suite 300, Chicago, Illinois 60604.

1.4    **Court**.  "Court" shall mean the United States District Court for the Northern District of Illinois.

1.5    **Covered Period**.  "Covered Period" shall mean the period from December 23, 2015 to June 28, 2016;

1.6    **Defendant**.  "Defendant" shall mean Envoy Air, Inc.

1.7    **Defendant's Counsel**.  "Defendant's Counsel" shall mean Mark W. Robertson and Charles J. Mahoney of O'Melveny & Myers LLP, 7 Times Square, New York, NY, 10036.

1.8    **Effective; Effective Date**.  The "Effective Date" is the seventh day after the last of the following dates:

a) All Parties, Class Counsel, and Defendant's Counsel have executed this Agreement;

b) The Court has entered, without material change, the Final Order and Judgment; and

c) The final disposition of any related appeals, or in the case of no appeal or review being filed, expiration of the applicable appellate period following entry of the Final Order and Judgment.

1.9    **Settlement: Account.** "Settlement Account" shall mean the account held and controlled by the Settlement Administrator following Defendant's deposit of the $300,000 Gross Settlement Fund within 14 days of the date of Preliminary Approval;

1.10   **Fairness Hearing**.  "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.11   **Final Order and Judgment**.  "Final Order and Judgment" shall mean the final order entered by the Court after the Fairness Hearing approving the settlement and entering Judgment pursuant to this Agreement and in accordance with Fed.R.Civ.P. 23(e).  A proposed version of the Final Order and Judgment shall be submitted to the Court in the form attached as Exhibit C or as otherwise further agreed to by the Parties.

**1.12** **Individual Settlement Amount**. "Individual Settlement Amount" shall mean the portion of the Settlement Fund that each Class Member is eligible to receive as determined by Class Counsel:

**1.13** **Litigation**. "Litigation" shall mean *Maysoun Abudayyeh, individually and on behalf of all others similarly situated v. Envoy Air, Inc.*, in the U.S. District Court for the Northern District of Illinois, Case No. 21-cv-00142.

**1.14** **Notice**. "Notice" shall mean the form that will be provided pursuant to Section 2.4 of this Agreement, subject to approval by the Court, substantially in the form attached as Exhibit A.

**1.15** **Net Settlement Fund**. "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for court-approved attorneys' fees, costs, and expenses as described in Sections 3.1 and 3.2, any court-approved Enhancement Award payment to Plaintiff as described in Section 3.3, and Settlement Administration Expenses. The Net Settlement Fund shall be used to pay all amounts due to Qualified Class Members.

**1.16** **Opt-Out Deadline**. "Opt-Out Deadline" shall mean the date that is 45 calendar days after the Settlement Administrator mails the Notice to Class Members pursuant to Section 2.4(c) of this Agreement. If the Settlement Administrator re-mails the Notice to any individual pursuant to Section 2.4(d) of this Agreement because the first mailing was returned as undeliverable, the Opt-Out Deadline for such individuals shall be the later of (a) 45 calendar days after the original mailing to all Class Members, or (b) 20 calendar days after the re-mailing. If the Opt-Out Deadline falls on a Sunday or holiday, the deadline will be the next business day that is not a Sunday or holiday.

**1.17** **Opt-Out Period**. "Opt-Out Period" shall mean the period of time in between the Settlement Administrator's mailing of the Notice and the Opt-Out Deadline.

**1.18** **Opt-Out Statement**. "Opt-Out Statement" shall refer to a Class Member's written, signed statement to the Settlement Administrator stating that he or she is opting out of the Settlement as described in Section 2.5(a) of this Agreement.

**1.19** **Order Granting Preliminary Approval**. "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class Members, and the time period for opt-outs and objections. A proposed version of the Order Granting Preliminary Approval shall be submitted to the Court in the form attached as Exhibit B.

**1.20** **Parties**. "Parties" shall refer to the Plaintiff and Defendant.

**1.21** **Plaintiff**. "Plaintiff" shall refer to Maysoun Abudayyeh.

**1.22** **Qualified Class Member**. "Qualified Class Member" shall mean a Class Member who does not opt out in the manner prescribed in Section 2.5(a) of this Agreement prior to the Opt-Out Deadline.

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

1.23    **Released Claims**.  "Released Claims" shall refer to any and all claims regarding Plaintiff's or the Class Members' biometric information while employed at Envoy, including by way of example, any claims arising out of or relating to Defendant's storage, collection capture, purchase, sale, disclosure, or other handling of biometric identifiers or biometric information based on any act or omission occurring from the beginning of time up through the date of Plaintiff's execution of this Agreement.  This includes any and all claims arising under BIPA, and any other state, local, or federal law, regulation, ordinance, or common law regarding biometric information.  By way of example, this includes any claim that Defendant failed to develop a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or information; captured, collected, obtained, purchased, received through trade, stored, possessed, used, sold, leased, traded, profited from, transferred, disclosed, redisclosed, or otherwise disseminated Plaintiff's or the Class Members' biometric identifiers and/or biometric information, or failed to store, transmit, or protect from disclosure all biometric identifiers and/or information using the reasonable standard of care within the Defendant's industry, or failed to store, transmit, or protect from disclosure all biometric identifiers and/or information in a manner in which Defendant stores, transmits, or protects other confidential and sensitive information.  The release of all claims related to Plaintiff's and the Class Members' biometric information while employed at Envoy shall include all related claims for loss, damages, statutory damages, liquidated damages, penalties, attorneys' fees and costs, expenses, and interest.

1.24    **Releasees**.  "Releasees" shall refer, jointly and severally, and individually and collectively, to Defendant and its current and former owners, affiliates (including but not limited to American Airlines, Inc.), parents or holding companies (including but not limited to American Airlines Group Inc.), subsidiaries (including but not limited to Envoy Aviation Group Inc.), and its and their respective past and present divisions, shareholders, principals, owners, members, employees, agents, affiliates, trustees, administrators, executors, directors, officers, managers, board members, partners, attorneys, insurers, reinsurers, accountants, financial and other advisors, investment bankers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), underwriters and lenders.

1.25    **Releasors**.  "Releasors" shall refer, jointly and severally, and individually and collectively to Plaintiff and the Class Members, and each of their respective heirs, assigns, spouses, children, beneficiaries, conservators, executors, administrators, attorneys and agents.

1.26    **Settlement**.  The "Settlement" shall mean the settlement recorded in this Agreement, and all exhibits.

1.27    **Settlement Administration Expenses**.  "Settlement Administration Expenses" are those expenses incurred and charged by the Settlement Administrator in effectuating the Settlement, including without limitation all fees and costs associated with the Settlement Administrator establishing any interest-bearing account or investment vehicle for the Settlement Fund (or liquidating/closing such account or vehicle) and providing Notice and any required communications to Class Members.

1.28 **Settlement Administrator**. "Settlement Administrator" shall mean the entity selected by Class Counsel to provide notice to the Class and administer payment of the settlement to Class Members.

1.29 **Settlement Fund**. The "Settlement Fund" shall refer to the Settlement Payment provided for in Section 3.1(a) of this Agreement.

## 2. APPROVAL AND CLASS NOTICE

2.1 **Stipulation to Certification**. The Parties stipulate, for settlement purposes only, to certification by the Court of this specific class as to all claims being released. If for any reason the Court does not approve this stipulation, or does not enter a Final Order and Judgment, or if this Settlement is lawfully terminated for any other reason, the preliminary and conditional certification of the class shall become null and void**.**

2.2 **Preliminary Approval by the Court**. Upon execution of this Agreement, Plaintiff will submit to the Court an Unopposed Motion for an Order Granting Preliminary Approval ("Preliminary Approval Motion"). In conjunction with doing so, Plaintiff will submit to the Court, among other things: (a) proposed Notice of Class Action Settlement, which is attached as Exhibit A, and (b) a proposed Agreed Order Granting Preliminary Approval, which is attached as Exhibit B. The Preliminary Approval Motion will seek the setting of dates for the submission of opt-outs, objections, and a Fairness Hearing. All proceedings in the Litigation will be stayed following entry of the Preliminary Approval Order, except as may be necessary to implement the Settlement or comply with the terms of the Settlement. Should the Preliminary Approval Order not be entered for any reason, the Parties agree to negotiate in good faith extended deadlines for further proceedings in the Litigation, which deadlines shall be submitted to the Court for approval and entry.

2.3 **Final Order and Judgment from the Court**. At least ten calendar days before the Fairness Hearing scheduled by the Court, Plaintiff will submit to the Court an Unopposed Motion for Final Approval ("Final Approval Motion"). In conjunction with doing so, Plaintiff will submit to the Court, as a condition of settlement, a Final Order and Judgment in a form attached as Exhibit C, except that the Parties may mutually agree to changes to the Proposed Agreed Final Order and Judgment prior to seeking the Court's final approval of the Settlement. The Proposed Agreed Final Order and Judgment will, among other things, (a) enter Judgment in accordance with this Agreement, (b) approve the Settlement as fair, adequate, reasonable, and binding on all Qualified Class Members, (c) dismiss the Litigation with prejudice, (d) enter an order permanently enjoining all Qualified Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (e) incorporate the terms of this Agreement.

2.4 **Class Notice**

   a) <u>Notice List to Settlement Administrator</u>. Within seven calendar days of the date of the Order Granting Preliminary Approval, Defendant shall provide to Class Counsel and the Settlement Administrator in electronic form, a Class List, containing the names, last known e-mail addresses, phone numbers, social security numbers and last

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

known mailing addresses of each Class Member, to the extent such information is reasonably available. Defendant will cooperate with Class Counsel and the Settlement Administrator with respect to the class list and updating the same. Defendant shall provide a declaration from an individual describing the process by which the Class List is created. Notice shall be sent via U.S. mail to the Class List where possible and via e-mail delivery where e-mail addresses are available and via settlement websites at www.fishlawfirm/envoy and/or caffarelli.com.

b) <u>Settlement Administrator to Update Addresses</u>. Prior to mailing the Notice, the Settlement Administrator will update the addresses using the National Change of Address database and other available resources deemed suitable by the Settlement Administrator. Defendant will provide reasonable assistance to the Settlement Administrator in updating addresses, if necessary, by responding to reasonable queries for additional information.

c) <u>Notice to Class Members</u>. Within ten calendar days after receiving the Notice List, or as soon thereafter as practicable, the Settlement Administrator shall mail, via First Class United States mail, postage prepaid, and by email (where available) the Notice appended as Exhibit A to all Class Members, using each individual's last known address as provided by Defendant and as updated by Class Counsel or the Settlement Administrator. The Notices shall inform all Class Members of their rights under this Agreement and that unless they opt out of the Settlement they will receive their proportionate share minus the court-approved award of attorneys' fees, costs, and expenses to Class Counsel; a court-approved Enhancement Award; and Settlement Administration Expenses. Class Members will not be required to submit a form or any other document in order to participate in and be bound by the Settlement. The Settlement Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the Notice is returned by the post office as undeliverable and shall attempt re-mailings as described below, including calling the Class Member when possible to ascertain a correct mailing address. The Settlement Administrator shall also send Notice via e-mail to all Class Members for whom e-mail addresses are available. Defendant's Counsel and Class Counsel have the right to make inquiries and receive any information from the Settlement Administrator as is necessary to the administration of this Settlement.

d) <u>Undeliverable Notice</u>. If any Notice is returned as undeliverable, the Settlement Administrator shall forward it to any forwarding addresses provided by the U.S. Postal Service. If no such forwarding address is provided, the Settlement Administrator shall call and email the Class Member to try and obtain an address, and if necessary, perform skip traces to attempt to obtain the most recent addresses for these Class Members. If a new address is obtained, the Settlement Administrator will promptly re-mail the applicable Notice Package to the Class Member, and that Class Member shall have the Opt-Out Period in which to decide whether to seek exclusion or to object. The Settlement Administrator shall, within three calendar days after the first mailing of Notice, notify Class Counsel and Defendant's Counsel of the precise date of the end of the Opt-Out Period.

**2.5     Class Member Opt-Out.**

a) Any Class Member may request exclusion from the Class by "opting out." Class Members who choose to opt-out of the class must mail a written, signed statement to the Settlement Administrator stating that he or she is opting out of the Settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address and telephone number of the Class Member to be valid. It must also contain the words to the effect of "I elect to exclude myself from the settlement in *Abudayyeh v. Envoy Air, Inc.*" and be signed in order to be valid. To be effective, such Opt-Out Statements must also be sent via First Class United States mail and postmarked by the Opt-Out Deadline. Unless a Class Member opts out of the Settlement, he or she will be deemed to participate and be bound by it, including the release in Section 3.7.

b) If a Class Member submits a deficient Opt-Out Statement, the Settlement Administrator shall notify the Class Member of the deficiency within three business days of receipt. The Class Member shall have ten calendar days to cure said deficiencies, at which point his or her attempted opt-out will be rejected if not received. Class Members submitting untimely or deficient Opt-Out Statements shall be bound by the Settlement and the release in Section 3.7.

c) Plaintiff shall not opt-out of the Settlement. Plaintiff's execution of this Agreement shall signal her agreement to all of the terms of the Settlement.

**2.6     Objections to Settlement.**

a) Class Members who wish to present objections to the Settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be filed with the Court and served upon Class Counsel and Defendant's Counsel at the address listed on the Class Notice no later than 45 calendar days after the mailing of the Class Notice, which applies notwithstanding any argument regarding non-receipt of the notice. Anyone who fails to file and serve timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement and from filing any appeal from any final approval order issued by the Court.

b) An objector who has filed and served a timely written objection in accordance with Section 2.6(a) must also appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector may withdraw their objections at any time. No objector may appear at the Fairness Hearing unless they have filed a timely objection that complies with the procedures provided in Section 2.6(a). Only Class Members who are Qualified Class Members may object to the Settlement. Any Class Member who has submitted an Opt-Out Statement may not submit objections to the Settlement.

c) To be heard at the Final Approval Hearing, any written objection must: (a) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Class Member; (b) include a statement of such Class

Doc ID: d1be3a3ac46a6a445d5eb71884a44f7c6b3d716c2

Member's specific objections; and (c) state the grounds for objection, as well as identify any documents which such objector desires the Court to consider.

d) The Parties may, but are not required to, file with the Court written responses to any filed objections at or prior to the Fairness Hearing.

e) Class Members cannot both object to and exclude themselves from the Settlement. Any Class Member who attempts to both object to and exclude themselves from the Settlement will be deemed to have excluded themselves, and will forfeit the right to object to the Settlement or any of its terms.

2.7 **Settlement Administrator Reporting**. After issuing the Notice, the Settlement Administrator shall provide periodic reports to Class Counsel and Defendant's Counsel for the Parties with respect to the numbers of individuals submitting Opt-Out Statements or objections. Within ten calendar days after the close of the Opt-Out Deadline, the Settlement Administrator shall prepare a final declaration or affidavit regarding the administration of the settlement.

2.8 **Motion for Final Order and Judgment**. No later than ten calendar days before the Fairness Hearing, Plaintiff will submit the Unopposed Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

2.9 **Entry of Judgment**. At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the Class for purposes of settlement only, (b) enter Judgment in accordance with the terms of this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Class Members, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Qualified Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Agreement.

2.10 **Right to Revoke**. Any Party has the right to withdraw from the Settlement at any time prior to the entry of the Final Order and Judgment if: (a) the Court does not certify the settlement class or a substantially similar settlement class; or (b) the opposing Party breaches the Agreement. Notwithstanding any other provision of this Agreement, the withdrawing Party shall pay the Settlement Administration Expenses through the date of withdrawal.

2.11 **Effect of Revocation or Failure to Grant Final Approval**. In the event the Court fails to enter the Final Order and Judgment in accordance with this Agreement, or the Agreement does not become Effective, or any Party revokes the Settlement pursuant to Section 2.10: (i) this Agreement shall have no force or effect, other than the non-admission provisions in Section 3.9; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the preliminary and conditional certification of the class shall become null and void, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with

respect to any issue, substantive or procedural; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class action certification or the merits of Plaintiff's claims or any other issue; and (v) the Litigation will proceed as if no settlement had been attempted, other than any adjustments of deadlines as approved by the Court.

## 3. SETTLEMENT TERMS

**3.1 Settlement Payment**.

a) Defendant agrees to the gross amount of $300,000 (the "Gross Settlement Fund"). This Gross Settlement Fund shall resolve and satisfy all obligations under this Agreement, including but not limited to all attorneys' fees, litigation costs and expenses, Settlement Administration Expenses, payments to Qualified Class Members, the Enhancement Award, and any other payments in connection with this Agreement or the Settlement.

b) The Gross Settlement Fund is the maximum amount that Defendant shall be obligated to pay under this Settlement for the 350 individuals identified in the Defendant's Class List produced on June 15, 2022 and only those individuals shall be bound by this Agreement.

c) Defendant shall fund the Gross Settlement Fund no later than 14 calendar days after the Order Granting Preliminary Approval.

d) Settlement payments will be made to all Qualified Class Members by the Settlement Administrator, as follows from the Gross Settlement Fund:

i. Subclass 1 is allocated before deduction for attorneys' fees, Service award, and expenses of litigation and administration, 90% of the Gross Settlement Fund, estimated to be $270,000 based upon $1,250 per person.

ii. Subclass 2 is allocated before deduction for attorneys' fees, Service award and expenses of litigation and administration, 10% of the Gross Settlement Fund, estimated to be $30,000 based upon $223.88 per person.

e) The Settlement Administrator will calculate the final amounts due to each such Qualified Class Member as the Final Individual Settlement Amount and issue checks payable to said Qualified Class Members.

f) Within seven calendar days following the Effective Date, the Settlement Administrator will distribute the money in the Gross Settlement Account by making the following payments:

i. Paying Class Counsel Court-approved attorneys' fees as described in Section

ii. Reimbursing Class Counsel for all costs and expenses approved by the Court as described in Section 3.2.

    iii.    Paying the Settlement Administrator as described in Section 1.27.

    iv.    Paying the Enhancement Award in the amount described in Section 3.3.

    v.    Paying Qualified Class Members their Final Individual Settlement Amounts as described in Section 3.1(d, e).

**3.2**     **Settlement Amounts Payable as Attorneys' Fees and Costs**.

a)     At least ten calendar days prior to the Fairness Hearing, Class Counsel shall petition the Court for attorneys' fees and reimbursement of reasonable litigation and mediation-related costs and expenses from the Settlement Fund. Class Counsel shall not seek more than 40% of the Gross Settlement Fund in fees, and shall also seek reimbursement of the actual costs and expenses incurred in the litigation and mediation up to $2,500.00. Defendant will not oppose such application. Defendant shall have no additional liability for attorneys' fees and costs relating to this Agreement, the Litigation, the Settlement, or any claims released by the Settlement beyond its funding of the Settlement Fund.

b)     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, costs, and expenses shall not terminate this Agreement or otherwise have an effect on the Court's ruling on the Motion for Judgment and Final Approval.

**3.3**     **Enhancement Award to Plaintiff**. Prior to the Fairness Hearing, Class Counsel will apply to the Court for Plaintiff to receive an Enhancement Award of $10,000 from the Settlement Fund for services rendered to the Class. Defendant will not oppose such application. Such Enhancement Award shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of such Enhancement Award. The outcome of the Court's ruling on the application for an Enhancement Award shall not terminate this Agreement or otherwise have an effect on the Court's ruling on the Motion for Judgment and Final Approval. Plaintiff shall not appeal any decision by the Court regarding the Enhancement Award. Defendant shall have no additional liability for this Enhancement Award beyond its funding of the Settlement Fund.

**3.4**     **Uncashed Checks**. Any funds remaining in the Net Settlement Fund after disbursement of the Participating Class Member Payments shall be given to Legal Aid Chicago as cy pres. The Settlement Administrator shall make such cy pres payment within 125 calendar days after the Effective Date.

**3.5**     **Distribution to Qualified Class Members**.

a)     The Net Settlement Fund shall be the amount of money remaining from the Settlement Fund after deducting (a) any attorneys' fees, plus costs and expenses approved by the Court, pursuant to Section; (b) any Enhancement Award approved by the Court pursuant to Section 3.3; and (c) any amounts paid to the Settlement Administrator

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

pursuant to Sections 1.27 and 3.1. The Net Settlement Fund shall then be allocated in equal shares to each Qualified Class Member as described in Section 3.1(d).

b) Qualified Class Members will have 90 calendar days after each check date to redeem their settlement payments. If Qualified Class Members do not redeem their settlement payment checks within the 90-day period, their settlement checks (the "Unclaimed Checks") will be void and the Settlement Administrator shall promptly issue a stop payment order on the original check. Qualified Class Members who do not redeem their settlement checks shall remain bound by the Settlement and the Release in Section 3.7. The provisions of any unclaimed property statute or law do not apply to this Agreement or the Settlement. The outcome of any proceeding related to the distribution of amounts associated with Unclaimed Checks shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

c) All payments to Qualified Class Members made pursuant to this Agreement shall be deemed to be paid to such Qualified Class Members solely in the year in which such payments actually are received by the Qualified Class Members. It is expressly understood and agreed that any amount paid to any Qualified Class Member shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement provided by Defendant or any Releasee, and no payment made pursuant to this Agreement or the Settlement will be considered as "Wages," "Compensation," "Earnings," "Salary," or any similar definition or form or payment.

**3.6    Taxability of Settlement Payments**.

a) For tax purposes, the Enhancement Award paid to Plaintiff pursuant to Section 3.3 shall be treated as a 1099-miscellaneous payment for statutory liquidated damages.

b) For tax purposes, the payments to Plaintiff and Qualified Class Members pursuant to Section 3.1 shall be allocated as non-wage compensation. The Defendant shall cooperate with the Settlement Administrator in order to facilitate all reporting with respect to all amounts payable to Qualified Class Members required pursuant to any federal, state, or local tax law or regulation. The Defendant shall also cooperate with the Settlement Administrator with respect to properly and timely filing and sending Form 1099s to any applicable recipient of the Settlement Funds.

c) Within five calendar days following the Effective Date, Class Counsel shall provide the Settlement Administrator with a duly completed W-9. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be reported by the Settlement Administrator on the applicable IRS Form 1099 as required by the Internal Revenue Code and shall be made without withholding, provided the Settlement Administrator has timely received a duly completed W-9 from Class Counsel.

d) Plaintiff and each individual Qualified Class Member will be solely responsible for all taxes, interest, penalties, or other amounts due with respect to any payment received pursuant to the Settlement. Plaintiff, on behalf of the Class Members and the Qualified Class Members, acknowledges and agrees that she has not relied upon any advice from Class Counsel, Defendant, or Defendant's Counsel as to the taxability of the payments received pursuant to the Settlement. Defendant shall have no responsibility for any taxes, interest penalties or other amounts due with respect to any payments made pursuant to the Settlement.

e) The Settlement Administrator, with the cooperation of the Defendant, shall handle all tax reporting with respect to the payments made pursuant to the Settlement, and shall report the payments in accordance with applicable law.

**3.7    Release of Claims by Plaintiff and Qualified Class Members**.

a) Upon the entry of the Final Order and Judgment, and for good and valuable consideration as described in this Agreement, Releasees shall be fully, finally and completely released, acquitted, and forever discharged from any and all Released Claims. Accordingly, upon entry of the Final Order and Judgement, all Releasors hereby fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon and cancel any and all Released Claims against Releasees, and shall be forever barred and enjoined from prosecuting any action against the Releasees asserting any and/or all Released Claims.

b) Upon the entry of the Final Order and Judgment, each Releasor waives any and all defenses, rights, and benefits that may be derived from the provisions of applicable law in any jurisdiction that, absent such waiver, may limit the extent or effect of the release contained in this Agreement.

c) Nothing in this release shall prohibit or restrict Plaintiff or Qualified Class Members from: (i) providing information to or cooperating with Congress, the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the Equal Employment Opportunity Commission ("EEOC"), the Occupational Safety and Health Administration ("OSHA"), the National Labor Relations Board ("NLRB") or any other federal, state or local government, regulatory, or law enforcement agency ("Government Agencies"), the Financial Industry Regulatory Authority ("FINRA"), or any other self-regulatory organization ("SRO"); (ii) reporting to Defendant's management or directors regarding conduct the employee believes to be in violation of the law or prohibits or restricts the employee from providing information to or cooperating with any Government Agencies or any SROs; (iii) communicating with any Government Agencies or SRO or otherwise participating in any investigation or proceeding that may be conducted by any Government Agency or SRO, including providing documents or other information; or (iv) receiving an award for information provided to any Government Agencies.

d) Class Counsel and Plaintiff, on behalf of the Class and each individual Qualified Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendant or Releasees for attorneys' fees or costs associated with Class Counsel's representation of Plaintiff, the Class, and the Qualified Class Members in this Litigation, the Settlement, or any Released Claims. Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of the Class in the Litigation.

3.8 **No Assignment**. Class Counsel and Plaintiff, on behalf of the Class and each individual Qualified Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

3.9 **Non-Admission**. Nothing relating to this Agreement, the Settlement, or any communications, papers, or orders related to the Agreement or Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or Releasees of any liability, culpability, negligence, misconduct or other wrongdoing toward Plaintiff, the Class Members, Releasors, or any other person, and Defendant and Releasees specifically disclaim and dispute any liability, culpability, negligence, misconduct or other wrongdoing toward Plaintiff, the Class Members, Releasors, or any other person, or that class certification is appropriate in this or any other matter. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies

3.10 **Non-Interference with Settlement**. Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Order and Judgment, Plaintiff and all Class Members and anyone acting on behalf of any Class shall be barred and enjoined from: (a) further prosecution of the Litigation; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on an individual or class action basis any action, claim or proceeding against Defendant or Releasees in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class action that involves any such claims.

3.11 **Miscellaneous**

a) **Cooperation Between the Parties; Further Acts**. The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.

b) **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

c) **Binding Effect**. This Agreement shall be binding upon the Parties and Class Counsel, with respect to Plaintiff, the Class Members, and each of their respective heirs, assigns, spouses, children, beneficiaries, conservators, executors, administrators, attorneys and agents.

d) **Arm's Length Transaction; Materiality of Terms**. The Parties have negotiated all the terms and conditions of this Agreement at arm's length, and through the representation of experienced counsel on both sides. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

e) **Captions**. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

f) **Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

g) **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois.

h) **Continuing Jurisdiction**. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby. The Court shall not have jurisdiction to modify the terms of this Agreement or to increase Defendant's payment obligations hereunder.

i) **Waivers, etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party(ies) of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

j) **When Agreement Becomes Effective**. Except for provisions of this Agreement requiring any Party to act or seek Court action prior to Court approval, which provisions are intended to be binding on the Parties upon mutual execution hereof, this Agreement shall become fully effective upon the Effective Date.

k) **Facsimile/Electronic Signatures**. Any signature made and transmitted by facsimile, photocopy or email for the purpose of executing this Agreement shall be deemed an

original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

l) **Extensions of Time**. If any deadlines related to the Settlement cannot be met, Class Counsel and Defendant's Counsel shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement. In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

m) **Counterparts**. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

**CLASS COUNSEL**:

DATED: August 26 , 2022          CAFFARELLI & ASSOCIATES LTD.

By: _____
Alexis D. Martin
*Attorneys for Plaintiff and the Settlement Class*

DATED: August 31 , 2022

FISH POTTER BOLANOS, LLC

By: _____
Mara Baltabols
*Attorneys for Plaintiff and the Settlement Class*

**PLAINTIFF**:

DATED: August ___31st___, 2022

By: _____
Maysoun Abudayyeh

**DEFENDANT**:

DATED:  August __26__, 2022

By: _____
On behalf of Defendant Envoy Air, Inc.

# Exhibit A

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

## NOTICE OF CLASS ACTION SETTLEMENT

*Maysoun Abudayyeh, individually and on behalf of all others similarly situated v. Envoy Air, Inc.*, in the U.S. District Court for the Northern District of Illinois, Case No. 21-cv-00142

**This is a court-authorized notice of a proposed class action settlement.**
**This is <u>not</u> a solicitation from a lawyer. This is <u>not</u> a notice of a lawsuit against you.**

**TO:** Passenger service agents of Envoy Air, Inc. ("Envoy") and non-union management and support staff employees of Envoy, as defined below, are members of the "Settlement Class," consisting of the following two subclasses:

**Subclass 1:** The 192 former Envoy passenger service agents ("PSAs") who worked at O'Hare International Airport ("O'Hare") and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were no longer employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline. In addition, Subclass 1 shall include the 24 current and former Envoy non-union management and support staff employees who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

**Subclass 2:** The 134 current and former Envoy PSAs who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were still employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

**A.    WHY HAVE YOU RECEIVED THIS NOTICE?** The Court ordered us to send you this notice because, while working for Envoy at O'Hare, you may have used a timeclock that utilized a scan of your finger and/or hand.

**B.    WHAT IS THIS LAWSUIT ABOUT?** The named plaintiff in this litigation, Maysoun Abudayyeh ("Plaintiff"), filed a class action lawsuit alleging that Envoy collected employees' biometric information without making the disclosures and receiving the written consent required by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"). Envoy denies these allegations. Notwithstanding their disagreements, the parties have proposed a settlement that, if approved by the Court, will resolve the claims.

**C.    WHAT IS THE PROPOSED SETTLEMENT?** Without admitting any fault or liability, and in exchange for a release of all claims about the Settlement Class's biometrics while employed at Envoy, Envoy has agreed to make available a settlement fund of $300,000 (the "Settlement Fund") to pay Settlement Class members, to pay an enhancement award to the Plaintiff for serving as a class representative, and to pay attorneys' fees and expenses to Class Counsel. Each person who does not timely exclude themselves from the settlement will be mailed a check for their pro rata share of the Settlement Fund, for an amount allocated depending upon Subclass.

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

**Defendant's records show that you are a member of Subclass [1][2], and your estimated net payment after deductions is $_____.**

The Court has preliminarily approved this settlement, subject to a fairness hearing that will occur on _____, in Courtroom 1925 of the Everette McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604, or by phone conference or other remote means as ordered by the Court. You are not required to appear at this hearing unless you filed an objection to the settlement.

## D. <u>WHAT CAN YOU DO NOW? YOU HAVE THREE OPTIONS.</u>

**1.** **<u>Do nothing.</u>** If you want to receive a settlement payment, ***you do not need to do anything.*** If you do nothing, you will receive your pro rata share of the Settlement Fund and be bound by the settlement agreement, including the release of any and all claims against Envoy and the Releasees (as that term is defined in the settlement agreement) regarding your biometric information while employed at Envoy. If required by law, you may also be sent a 1099 tax reporting form.

**2.** **<u>Exclude yourself from the Settlement Class and the settlement.</u>** If you do not want to be legally bound by the settlement, you must exclude yourself within (45 days after the initial mailing of the settlement Notice). To exclude yourself, you must mail, via First Class United States mail and postmarked by the deadline, a written, signed statement to the Settlement Administrator at the address below stating, "I elect to exclude myself from the settlement in *Abudayyeh v. Envoy Air, Inc*.," with your full name, address, telephone number, and signature. If you exclude yourself, you will not be bound by the Settlement Agreement, but you will NOT get a payment.

**3.** **<u>Object to the settlement in writing.</u>** If you object to the settlement and wish to file an objection rather than excluding yourself, you must file your objection in writing with the Clerk of the Clerk of the United States District Court for the Northern District of Illinois Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. Your objection must be filed within (45 days after the initial mailing of the settlement Notice). You must also serve copies of your objection and any supporting memoranda or materials on the administrator, _____, at the contact information listed below, along with Class Counsel at the contact information listed below, and Defendant's Counsel (Attn: Mark W. Robertson, O'Melveny & Myers, 7 Times Square, New York, NY 10036). Your objection must be postmarked by (45 days after the initial mailing of the settlement Notice). Your objection must be signed by you or your attorneys, must identify your name, address, and telephone number, and must include a written statement of the grounds for the objection. If your objection does not comply with these requirements, the Court may strike and disregard your objection. It is not enough to say that you object; you must state the reasons why you believe the Court should reject the settlement. If you file an objection, then you must appear at the final approval hearing before Judge Andrea R. Wood in Courtroom 1925 of the Everette McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604, or by phone conference or other remote means as ordered by the Court, on _____ at

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

_____. You are not required to attend this hearing unless you object to the settlement.

**E.     WHO REPRESENTS THE CLASS?** The Court appointed Plaintiff to be the "Class Representative" and appointed Caffarelli & Associates, Ltd. and Fish Potter Bolaños, P.C. as "Class Counsel." At the fairness hearing, Class Counsel will request that the Court approve an enhancement award of $10,000 from the Gross Settlement Fund for the Class Representative for their service on behalf of the Settlement Class. Class Counsel will also request that the Court award them up to 40% of the Settlement Fund as attorneys' fees, plus their out-of-pocket litigation expenses also to be paid from the Settlement Fund.

**F.     WHEN WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?** The Court will hold a hearing to decide whether the proposed settlement is fair and reasonable and should be approved. At that fairness hearing, the Court will hear any objections and arguments about the proposed settlement, including about the attorneys' fees and expenses requested by Class Counsel and the enhancement award requested for the Class Representative. The fairness hearing will take place on _____ at _____, in Courtroom 1925 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604, or by phone conference or other remote means as order by the Court. You do not need to attend this hearing unless you object. The fairness hearing may be continued to a future date without further notice. If the Court does not approve the settlement, the litigation will proceed as if no settlement has been attempted. If the settlement is not approved, there is no assurance that the Settlement Class will recover more than is provided in the settlement, or anything at all.

**G.     HOW DO I OBTAIN MORE INFORMATION?** This Notice is general and does not cover all the issues and proceedings in the settlement or the underlying litigation. You can learn more about the settlement by contacting the settlement administrator, _____ at **1-xxx-xxx-xxxx**, or Settlement Class counsel, Caffarelli & Associates, Ltd. at (312) 763-6800 or Fish Potter Bolaños, P.C. at (312) 861-1800. You may also review the settlement agreement and related case documents at the website: www.fishlawfirm.com/envoy or www.caffarelli.com/resources.

If you have any questions or for more information, contact the settlement administrator or Settlement Class counsel at:

| **Settlement Administrator** | **Settlement Class Counsel** | **Settlement Class Counsel** |
|---|---|---|
| Analytics Consulting LLC | Alejandro Caffarelli | Robin Potter |
| Address Line 1 | Alexis D. Martin | Mara Baltabols |
| Address Line 2 | Caffarelli & Associates, Ltd. | Fish Potter Bolaños, P.C. |
| Telephone Number | 224 S. Michigan Ave., Suite 300 | 200 East Fifth Ave., Suite 123 |
| Email address | Chicago, Illinois 60604 | Naperville, IL 60563 |
| | (312) 763-6880 | (312) 861-1800 |
| | info@caffarelli.com | admin@fishlawfirm.com |

Please do not contact the Clerk of the Court, the Judge, or the Judge's staff, because they cannot answer your questions or give you advice about this settlement.

**BY ORDER OF THE COURT**

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

# Exhibit B

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAYSOUN ABUDAYYEH, individually
and on behalf of all others similarly situated,

Plaintiff,

v.

ENVOY AIR, INC.,

Defendant.

Case No. 1:21-cv-00142

Judge Andrea R. Wood
Magistrate Judge Heather K. McShain

## PRELIMINARY APPROVAL ORDER

This matter having come before the Court on Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement of the above-captioned matter (the "Action") between Plaintiff MAYSOUN ABUDAYYEH ("Plaintiff"), and ENVOY AIR, INC, ("Defendant") (collectively, "the Parties"), as set forth in the Class Action Settlement Agreement, between Plaintiff and Defendant (the "Settlement Agreement"), and the Court having considered the papers filed and proceedings in this matter, and being fully advised in the premises, IT IS HEREBY ORDERED, as follows:

1.    Capitalized terms not defined in this Order are defined in the Parties' Settlement Agreement.

2.    The Court finds, on a preliminary basis, that the Settlement is fair, reasonable, and adequate.

3.    With the assistance of Magistrate Judge Heather K. McShain, the Settlement Agreement was negotiated at arm's-length between counsel for the Parties who are experienced in class action litigation.

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

4.     The Court finds, on a preliminary basis, that Class Counsel has adequately represented the proposed Class Members.

5.     For settlement purposes only, the Court certifies a Settlement Class defined collectively as the following subclasses:

Subclass 1: The 192 former Envoy passenger service agents ("PSAs") who worked at O'Hare International Airport ("O'Hare") and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were no longer employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.  In addition, Subclass 1 shall include the 24 current and former Envoy non-union management and support staff employees who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

Subclass 2: The 134 current and former Envoy PSAs who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were still employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this action and members of their families, (2) persons who properly execute and file a timely request for exclusion from the Settlement Class, and (3) the legal representatives, successors or assigns of any such excluded persons.

6.     The Court finds that distribution of the Notice to the proposed Class Members is justified because Plaintiff has shown that the Court will likely be able to (i) approve the Settlement under Rule 23(e)(2) and (ii) certify the proposed class for purposes of settlement.

7.     The Court finds that, subject to the Final Approval Hearing, the Settlement Agreement is fair, reasonable, and adequate, is likely to be approved under Federal Rule of Civil Procedure 23(e)(2), and is in the best interests of the Settlement Class set forth above. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

class action, and provides substantial relief to the Settlement Class without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal. The Court also finds that the Settlement Agreement (a) is the result of arm's-length negotiations between experienced class action attorneys; (b) is sufficient to warrant notice of the settlement and the Final Approval Hearing to be disseminated to the Settlement Class; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715; and (d) is not a finding or admission of liability by the Defendant or any other parties.

8. For settlement purposes only, the Court appoints Maysoun Abudayyeh as the Class Representative.

9. For settlement purposes only, the Court appoints as Class Counsel:

| | |
|---|---|
| Alejandro Caffarelli<br>Alexis D. Martin<br>Caffarelli & Associates, Ltd.<br>224 S. Michigan Ave., Suite 300<br>Chicago, Illinois 60604<br>Tel. (312) 763-6880<br>amartin@caffarelli.com | Robin Potter<br>Mara Baltabols<br>Fish Potter Bolaños, P.C.<br>200 East Fifth Ave., Suite 123<br>Naperville, IL 60563<br>(312) 778-5002<br>admin@fishlawfirm.com |

10. The Court appoints Analytics, LLC as the Settlement Administrator to perform all duties described in the Settlement Agreement and ordered by this Court.

11. The Court finds that distribution of the proposed Notice of Class Action Settlement ("Notice") by mail and, where reasonably possible, email is the best practicable means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement and the Final Approval Hearing to all persons affected by or entitled to participate in the Settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23, due process, the Constitution of the United States, and other applicable laws. The proposed Notice is accurate, objective, and informative. It provides Class Members with all of the

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

information necessary to evaluate the fairness of the Settlement and to make an informed decision regarding whether to participate in the Settlement.

12.     Any Settlement Class Member may request to be excluded from the Settlement by submitting a written request for exclusion to the Settlement Administrator as described in the Notice within 45 days from the date of initial Notice distribution.

13.     Any Settlement Class Member who excludes himself or herself from the Settlement will not be entitled to any recovery under the Settlement and will not be bound by the Settlement or have any right to object, appeal, or comment on it.

14.     Any Class Member who does not request to be excluded from the Settlement may object to the Settlement by submitting a written statement to the Settlement Administrator as described in the Notice within 45 days from the date of initial Notice distribution.

15.     Settlement Class Counsel shall file a motion for attorney fees, litigation costs, settlement administration costs, and the Class Representative's Enhancement Award ("Fee Petition") no later than [ten days before the Fairness Hearing].

16.     Settlement Class Counsel shall file a motion for final approval of the Settlement no later than [ten days before the Fairness Hearing]. The motion for final approval shall include copies of any objections submitted and identify any Settlement Class Members who have requested to be excluded from the Settlement.

17.     The Court schedules a Fairness Hearing for _____ in Courtroom 1925 of the Everette McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604, or by phone conference or other remote means as ordered by the Court, to consider, among other things, (1) whether to finally approve the Settlement; (2) whether to approve Class Counsel's request for attorney fees and litigation costs; (3) whether to approve the Settlement

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

Administrator's costs; and (4) whether to approve the Class Representative's request for an Enhancement Award. Settlement Class Members may, but are not required to, appear at the Fairness Hearing and request to speak in favor or against the Settlement. The Court will inform the Parties whether the Fairness Hearing will take place by phone, or other remote means.

18.     The Fairness Hearing may be postponed, adjourned, transferred, or continued by order of the Court without further notice to Settlement Class Members. At or following the Fairness Hearing, the Court may enter a Final Judgment approving the Settlement and entering a Final Approval Order in accordance with the Settlement that adjudicates the rights of all Settlement Class Members.

Entered: _____          _____
                                                          Hon. Andrea R. Wood

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

# Exhibit C

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MAYSOUN ABUDAYYEH, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-00142 |
| | Judge Andrea R. Wood |
| ENVOY AIR, INC., | Magistrate Judge Heather K. McShain |
| Defendant. | |

**FINAL ORDER AND JUDGMENT**

This matter having come before the Court on Plaintiff's Unopposed Motion and Memorandum in Support of Final Approval of Class Action Settlement of the above-captioned matter (the "Action") between Plaintiff MAYSOUN ABUDAYYEH ("Plaintiff"), and ENVOY AIR, INC, ("Defendant") (collectively, "the Parties"), as set forth in the Class Action Settlement Agreement, between Plaintiff and Defendant (the "Settlement Agreement"), due and adequate notice having been given to the Settlement Class, and the Court having considered the papers filed and proceedings in this matter, and being fully advised in the premises,

IT IS HEREBY ORDERED:

1.     Capitalized terms not otherwise defined in this Final Approval Order are defined in the Parties' Settlement Agreement.

2.     The Court-approved Notice of Class Action Settlement ("Notice") was distributed by the Settlement Administrator, Analytics, LLC, to Settlement Class Members by direct mail and, where available, by email. The Parties also established a publicly-

1

available settlement website with the Notice, Settlement Agreement, and Preliminary Approval Order. The Notice and the methods of distribution satisfy due process, the requirements of Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure, and constitute the best notice practicable under the circumstances.

3.    [Number] Settlement Class Members submitted objections or excluded themselves from the Settlement.

4.    The Court grants final certification of the class that the Court previously certified for settlement purposes in its Preliminary Approval Order. The Class is defined collectively as the following subclasses:

> Subclass 1: The 192 former Envoy passenger service agents ("PSAs") who worked at O'Hare International Airport ("O'Hare") and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were no longer employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.  In addition, Subclass 1 shall include the 24 current and former Envoy non-union management and support staff employees who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

> Subclass 2: The 134 current and former Envoy PSAs who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were still employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families, (2) persons who properly execute and file a timely request for exclusion from the Settlement Class, and (3) the legal representatives, successors or assigns of any such excluded persons.

5.    The Court finds the settlement memorialized in the Settlement Agreement and filed with the Court is fair, reasonable, and adequate, and in the best interests of

Doc ID: d1be3a3c46a6a445d5eb71884a44f7c6b3d716c2

Settlement Class Members. The Court finds that: (a) the strength of the Settlement Class Representative's and Settlement Class Members' claims weighed against the Defendants' defenses and the complexity, length and expense of further litigation support approval of the Settlement; (b) the Gross Settlement Fund of $300,000 as set forth in the Settlement Agreement is a fair, reasonable and adequate settlement of the claims; (c) the Settlement was reached pursuant to arm's-length negotiations between the Parties, with the assistance of a neutral mediator; (d) the support for the Settlement expressed by Settlement Class Counsel, who have significant experience representing parties in complex class actions, including those involving Biometric Information Privacy Act claims, weighs in favor of approval of the Settlement; (e) the absence of any objections to the Settlement by Settlement Class Members supports approval of the Settlement; and (f) the Action has progressed to a stage where the Court and the parties could evaluate the merits of the case, potential damages, and the probable course of future litigation.

6.     The Parties and the Settlement Administrator are ordered to comply with the terms of the Settlement Agreement.

7.     The Court awards $_____ to the Settlement Administrator, _____, for its work administering the Settlement, which is payable from the Gross Settlement Fund as described in the Settlement Agreement.

8.     The Court awards Settlement Class Counsel $_____ in attorney fees and $_____ in litigation costs, which are payable from the Gross Settlement Fund as described in the Settlement Agreement.

3

9.      The Court awards Settlement Class Representative Maysoun Abudayyeh $10,000 as an Enhancement Award, which is payable from the Gross Settlement Fund as described in the Settlement Agreement.

10.     This matter is dismissed with prejudice. The Court retains jurisdiction solely with respect to the interpretation, implementation, and enforcement of the terms of the Parties' Settlement Agreement.


Entered: _____          _____

                                          Hon. Andrea R. Wood

Doc ID: d1be3a4c46a6a445d5eb71884a44f7c6b3d716c2