**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MAYSOUN ABUDAYYEH, individually
and on behalf of all others similarly situated,

        Plaintiff,

v.

ENVOY AIR, INC.,

        Defendant.

Case No. 1:21-cv-00142

Judge Andrea R. Wood

Magistrate Judge Heather K. McShain

**PLAINTIFF'S UNOPPOSED MOTION FOR JUDGMENT AND**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. THE ALLEGATIONS .......................................................................................... 2

III. PROCEDURAL HISTORY ................................................................................. 4

IV. SUMMARY OF PROPOSED SETTLEMENT TERMS ..................................... 6

    A. The Settlement Class ................................................................................... 6

    B. Administration and Notice ........................................................................... 6

    C. Class Release ................................................................................................ 8

    D. Monetary Relief for Participating Class Members ...................................... 8

    E. Class Representative Enhancement Award .................................................. 9

    F. Attorneys' Fees and Costs .......................................................................... 10

V. FINAL APPROVAL IS WARRANTED ............................................................ 11

    A. Rule 23(e)(2) Factors Favor Final Approval ............................................ 12

    i. The Class Representative and Class Counsel Have Adequately
    Represented the Class ....................................................................................... 12

    ii. The Settlement was Reached Through Arm's Length, Non-Collusive
    Negotiations ...................................................................................................... 13

    iii. The Settlement Secures Positive Relief for Class Members ................... 14

    iv. Class Members are Treated Equitably ..................................................... 16

    B. The Proposed Settlement is Fair, Reasonable, and Adequate ............... 16

    i. Further Litigation Would be Highly Complex, Protracted, and Expensive to
    Address the Merits of Plaintiff's Claims and Class Certification ...................... 16

    ii. Administration and Notice Procedures were Robust, and the Settlement has been
    Well Received by the Class Members ................................................................ 17

    iii. The Opinion of Competent Counsel Weighs in Favor of Approval ................... 19

VI.     CONCLUSION ................................................................................................................20

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ...................................................................10

**United States Appellate Court Cases**

*Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021) ...............................................17

*Miller v. Southwest Airlines*, 926 F.3d 898 (7th Cir. 2019) .........................................................13

*Synfuel v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)..............................................12

*Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978 (7th Cir. 2002) .......................................11

*Wong v. Accretive Health*, 773 F.3d 859 (7th Cir. 2014) ......................................................12, 13

**United States District Court Cases**

*AIG v. ACE INA Holdings*, No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ..........11

*Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816 (N.D. Ill. 2002)....................................................................................................................................18

*Binissia v. ABM Indus., Inc.*, No. 13 CV 1230, 2017 WL 4180289 (N.D. Ill. Sept. 21, 2017) ....11

*Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May 14, 2021) ....................................................................................................................................12

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...............................18

*In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202 (N.D. Ill. 2019).............12

*In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 6406084 (N.D. Ill. Dec. 6, 2013)........................................................................................................................................18

*McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011)........................................................................................................................................17

*McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d. 806 (E.D. Wis. 2009) ...................20

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .......................................................................................................................18

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................19

*Snyder v. Ocwen Loan Servicing*, No. 14 CV 8461, 2019 WL 2103379
(N.D. Ill. May 14, 2019) ................................................................................ 12, 13

**Illinois Supreme Court Cases**

*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, 129 N.E.3d 1197 ....................................... 16

**Illinois Appellate Court Cases**

*Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, 184 N.E.3d 466, <u>appeal allowed</u>,
184 N.E.3d 1029 (Ill. 2022) ........................................................................... 16

*Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 IL App (1st) 210279 ............................. 19

**Illinois Circuit Court Cases**

*Baldwin v. Metrostaff*, No. 2019-CH-04285 (Il. Cir. Ct. Cook Cnty. May 3, 2022) .................... 15

*Lark v. McDonald's USA, LLC*, No. 17-L-559 (Il. Cir. Ct. St. Clair Cnty. Feb. 28, 2022) .......... 15

*Marshall v. Lifetime Fitness, Inc.*, No. 2017-CH-14262
(Il. Cir. Ct. Cook Cnty. July 30, 2019) ........................................................... 15

*McGee v. LSC Commc'nd, Inc.*, 2017-CH-12818 (Cir. Ct. Cook Cnty. Nov. 11, 2019) ............. 10

*Prelipceanu v. Jumio Corp.*, No. 2018-CH-15883 (Il. Cir. Ct. Cook Cnty. July 21, 2020).......... 10

*Rosenbach v. Six Flags Ent. Corp.*, No. 2016-CH-00013
(Il. Cir. Ct. Lake Cnty. Oct. 29, 2021)........................................................... 15

*Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Il. Cir. Ct. Cook Cnty. Dec. 1, 2016)............ 10

*Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496 (Il. Cir. Ct. Cook Cnty. Aug. 1, 2019) ......... 15

*Svagdis v. Alro Steele Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cnty. Jan. 14, 2019) ................... 10

*Taylor v. Sunrise Senior Living Mgmt., Inc.*, No. 2017-CH-15152
(Il. Cir. Ct. Cook Cnty. Feb. 14, 2019)........................................................... 15

*Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140
(Il. Cir. Ct. Cook Cnty. Dec. 5, 2018) ....................................................... 10, 15

*Zhirovetskiy v. Zayo Grp., LLC*, No. 2017-CH-09323
(Il. Cir. Ct. Cook Cnty. Apr. 8, 2019) ........................................................... 15

## Miscellaneous Authority

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002) ...............6

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ...........................................................................................18

*McLaughlin on Class Actions* (8th ed.) .......................................................................................18

The *Manual for Complex Litigation* (Fourth) (2004) ...................................................................5

*The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71 (2007) ..........................................................................................................................18

Plaintiff Maysoun Abudayyeh ("Plaintiff"), individually and on behalf of all other similarly situated individuals, by and through her undersigned counsel hereby moves for judgment and final approval of the class action settlement reached by the Parties through arms-length negotiations. Defendant Envoy Air, Inc. ("Envoy") does not oppose this Motion. As detailed below, notice was robust with no requests for exclusion and no objections. Participating class members will each receive a substantial direct cash benefit in line with the average amount received by participating class members in other settlements throughout Illinois under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA" or "the Act").

## I. INTRODUCTION

As more fully described herein, this is a $300,000 **non-reversionary** settlement in which the entire common fund is being distributed. All Class Members who did not exclude themselves will receive a check without having to submit claims, and any residual funds will be paid to a cy pres recipient. Following this Court's preliminary approval of the Parties' Settlement Agreement and Release ("Settlement Agreement"), attached to this motion as Exhibit A, on October 21, 2022, administration proceeded on schedule. In accordance with the Court-approved plan described in the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") and as ordered by this Court, direct individual notice of the Settlement was mailed (and emailed, where available) to all putative settlement class members ("Class Members"). See Exhibit B, Barazesh Decl. at ¶¶7, 8. As detailed in the Motion for Preliminary Approval, all Class Members who did not exclude themselves from the settlement will receive a settlement payment. 346 out of 350 Class Members received notice. Id. at ¶ 14. At the conclusion of the claim period, there were zero requests for exclusion, and zero objections. Id. at ¶¶ 15, 16.

Plaintiff respectfully submits that the complete absence of objections and exclusions speak to the fairness, reasonableness, and adequacy of the Settlement, the effectiveness of the Notices, as well as the ease of the claim administration plan. The overwhelmingly positive reaction from Class Members also underscores the value the Class Members place on the terms of the Settlement agreed to by the Parties. This is a fair and reasonable result, particularly in view of the significant known and unknown risks and anticipated delays involved in litigating the merits of BIPA claims and inherent in pursuing these claims individually for a large percentage of Class Members.

Defendant has paid $300,000 into a Settlement Fund. If approved, the Claims Administrator will distribute from the Settlement Fund: (1) court-approved legal fees and costs; (2) a court-approved Enhancement Award to Ms. Abudayyeh; (3) the Settlement Administration Expenses; (4) payments to each Participating Class Member; and (5) a *cy pres* award of any amount remaining in the Settlement Fund after the distribution from unclaimed checks. For the reasons set forth below, both the form and substance of this Settlement satisfy the standards for final approval, and it should therefore be approved.

## II. THE ALLEGATIONS

Plaintiff, Maysoun Abudayyeh ("Abudayyeh"), was employed by Envoy as a Passenger Service Agent from in or about July 2000 to February 13, 2017, and from June 29, 2017 through September 2017. D.E. 1-1, Cplt. ¶ 11. During her employment, Envoy required Ms. Abudayyeh and similarly situated individuals to clock in and out by scanning her fingerprints and/or handprint. Id. ¶¶ 12-14, 18; D.E. 16, Decl. of Renae Clemens ¶ 10. Plaintiff alleges that Defendant failed to provide Ms. Abudayyeh with written notice detailing how or why they were collecting, capturing, storing, and/or using her biometric data, or provide any policies concerning data retention. D.E. 1-1, Cplt. ¶¶ 15-17, 20, 22-23. Plaintiff further alleges that Envoy did not

obtain a written release from Plaintiff or the putative class members before it collected, captured or otherwise obtained their biometric data.  Id. ¶¶ 21, 24.

On November 25, 2015, the National Mediation Board certified that the Communications Workers of America, AFL-CIO ("the Union") had been duly designated and authorized to represent employees of Envoy in the craft or class of Passenger Service Employees.  Id. ¶ 25. Effective June 29, 2016, Envoy and the Union established an Interim Grievance Procedure ("IGP").  D.E. 16-1, Def. Ex. 1.  Effective April 26, 2017, Envoy and the Union entered an Interim Agreement ("IA").  D.E. 16-2, Def. Ex. 2.  The IA created procedures for grievances and submitting certain claims to the System Adjustment Board.  Id. at 3.  Effective July 19, 2019, the Union and Defendant entered a Letter of Agreement ("LOA") regarding arbitration and waiver of certain claims, including "manner of clocking in and out".  Cplt. ¶ 26; D.E. 16-3, Def. Ex. 3 at 2.  The LOA was incorporated into their collective bargaining agreement ("CBA"), which went into effect on August 15, 2019.  D.E. 1-1, Cplt. ¶ 27; D.E. 16-3, Def. Ex. 4 at 2, 66, 72.  The CBA also included a general management rights' clause and only applied to Envoy employees working as of August 15, 2019.  D.E. 16-3, Def. Ex. 4 at 2, 6.

## III.    PROCEDURAL HISTORY

On December 23, 2020, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, Chancery Division, alleging that Envoy violated BIPA by requiring her and other employees to use a biometric timekeeping system as part of their jobs. D.E. 1-1.  Shortly thereafter, Envoy removed the lawsuit to the United States District Court for the Northern District of Illinois. D.E. 1. On January 27, 2021, Envoy filed its first Motion to Dismiss the Original Complaint for lack of subject matter jurisdiction on the argument that Plaintiff's claims were preempted by the Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA") and the Airline Deregulation Act, 49 U.S.C.

§ 41713, et seq. ("ADA"). <u>D.E. 14, 15</u>. Plaintiff sought to depose Envoy's declarant, Renae Clemens, in connection with the Motion, which the Court ultimately denied. <u>D.E. 21, 23</u>. The Court stayed discovery during the pendency of Defendant's Motion to Dismiss, but for the exchange of initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). <u>D.E. 21</u>. In compliance with the Court's order the parties exchanged their initial disclosures by February 26, 2021 and, as Plaintiff had requested, Defendant included documents related to the jurisdictional arguments raised in the Motion to Dismiss. <u>Id.</u> On August 3, 2021, the Court issued an opinion on Defendant's Motion to Dismiss, granting it in part and denying it in part. <u>D.E. 28, 29</u>. The Court held that the ADA does not preempt BIPA and that Plaintiff's BIPA claims for Defendant's violations prior to any written agreement with the union, i.e., before the June 29, 2016 agreement, could proceed because they were not preempted by the RLA, but dismissed Plaintiff's claims to the extent they were based on conduct occurring after that date finding them preempted. <u>D.E. 29</u>.

On September 16, 2021, Plaintiff Abudayyeh amended her complaint to add an additional class representative and to reflect the class period of December 23, 2015 through June 29, 2016, in accordance with Court's Memorandum Opinion and Order. <u>D.E. 29, 42</u>. On October 7, 2021, Defendant filed a Rule 12(b)(1) Motion to Dismiss the Amended Complaint, renewing their argument that Plaintiff's claims were preempted by the RLA based upon other purported union agreements and that determining whether they were intended to apply retroactively would require interpretation of the agreements. The Parties fully briefed Defendant's Motion to Dismiss the Amended Complaint. <u>D.E. 55-56</u>.

Following briefing of the second Motion to Dismiss and engaging in written discovery, the Parties agreed to participate in settlement discussions and scheduled a settlement conference with Magistrate Judge McShain. In advance of settlement conference, the Parties exchanged mediation

statements with the relevant legal and factual arguments for their respective positions in the case. Additionally, on June 28, 2022, by agreement, Plaintiff entered a stipulated dismissal of Chelsea Burrow from the case. <u>D.E. 74.</u> On June 29, 2022, the Parties participated in a day-long mediation with Judge McShain and, following several more days of additional deliberation with the assistance of the of the Magistrate, were able to reach a settlement. <u>D.E. 76.</u>

On October 4, 2022, the Court held a hearing on the Motion for Preliminary Approval, which was granted. <u>D.E. 83</u>. The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). The first two steps in this process have occurred. With this Motion, Plaintiff respectfully requests that the Court take the third and final step in the process by granting final approval of the Settlement.

## IV.    SUMMARY OF PROPOSED SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement Class includes a maximum total of 350 identified individuals who worked for Envoy as passenger service agents or were non-union employees at O'Hare during the class

period and who used handpunch and/or fingerscan timeclocks in conjunction with their employment. The Class is limited to O'Hare because Envoy did not utilize handpunch and/or fingerscan timeclocks at any other facilities in Illinois during the relevant time period. Envoy asserts, and provided evidence to demonstrate, that Class Members who were still employed by Envoy as of February 25, 2022 had entered into a binding arbitration agreement and released their BIPA claims in exchange for consideration in the form of additional time off. As a result, Plaintiff negotiated relief for the Class in the form of two groups: Subclass 1 consisting generally of those who were no longer employed with Envoy as of February 25, 2022, and Subclass 2 consisting of those who were employed with Envoy as of February 25, 2022.

For settlement purposes only, the Court preliminarily approved a Settlement Class consisting of the following subclasses:

> Subclass 1: The 192 former Envoy passenger service agents ("PSAs") who worked at O'Hare International Airport ("O'Hare") and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were no longer employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline. In addition, Subclass 1 shall include the 24 current and former Envoy non-union management and support staff employees who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

> Subclass 2: The 134 current and former Envoy PSAs who worked at O'Hare and who used handpunch and/or fingerscan timeclocks between December 23, 2015 and June 28, 2016, in conjunction with their employment at Envoy, and who were still employed with Envoy as of February 25, 2022, and who do not opt-out of the Settlement prior to the Opt-Out Deadline.

D.E. 83.

## B. Administration and Notice

As described in the Motion for Preliminary Approval, the administration and notice procedure was designed to provide putative class members with direct written notice of the

Settlement. Consistent with draft notices submitted to the Court at the time of preliminary approval, the detailed Notices fully described the settlement terms and provided information clearly informing Class Members of their options and how to opt out, object, or obtain additional information from the Claims Administrator and/or directly from Class Counsel, among other things. See Exhibit B, Decl. of C. Barazesh. The Notice identified the amounts that could be paid out of the Gross Settlement Fund (incentive award, attorneys' fees, litigation costs, administration expenses) and clearly stated that subject to Court approval, if all Class Members participate in the Settlement, as a member of Subclass 1 they would receive a net payment of approximately $673.76, or if a member of Subclass 2 then they would receive a net payment of approximately $120.67.

In compliance with the Settlement Agreement and consistent with the Order Granting Preliminary Approval ("Preliminary Approval Order"), Defendant timely provided the Claims Administrator with a list of all the individuals identified as Class Members ("Class List") along with all known contact information. See Ex. B at ¶ 5. The Settlement website, www.fishlawfirm/envoy, also posted the Notice and the Settlement Agreement and the Preliminary Approval Order. The Claims Administrator cross-referenced the names and addresses with the U.S. Postal Service's ("USPS") National Change of Address Database and, through this method, updated any outdated addresses. Id. ¶ 6.

On October 21, 2022, the Claims Administrator mailed and emailed (where available) the Notice Packets. Id. ¶¶ 7-8. The United States Postal Service returned 23 of the Notice Packets to the Claims Administrator, Analytics Consulting, LLC ("Analytics"). Id. ¶ 11. Through additional searches, the Claims Administrator was able to locate updated addresses for all 23 Class Members and remailed the Notice Packets to the corrected addresses. Id. After the re-mailing, 5 Notices were

again returned to the Claims Administrator. All five notices belonged to members of Subclass 1. Of those five returned Notices, one Class Member received notice by email. Id. ¶ 12. Ultimately, only four notices remained undeliverable. Id.

After the conclusion of the claims period, Analytics received no requests for exclusion and no objections to the Settlement. Id. ¶¶ 15, 16. 346 Settlement Class Members (98.85%) received notice and will automatically receive their direct settlement payments, as none of these individuals submitted an Opt-Out Statement. Id. ¶¶ 14-16.

### C. Class Release

All Class Members who did not timely exclude themselves from the Settlement shall be bound by the Release set forth in the Settlement Agreement. Class Members shall be bound by all determinations and orders pertaining to the Settlement. Plaintiff and all other Class Members who did not exclude themselves from the Settlement will fully release Defendant, consistent with the Settlement Agreement. The release covers all claims and related actions, arising out of, related to, or connected with BIPA and Defendant's time and attendance system, including all claims and actions that were asserted or could have been brought by Class Members arising out of or related to the factual allegations of this litigation, regardless of whether the claim was, in fact, brought, as set forth more fully in Section 3.7 of the Settlement Agreement.

### D. Monetary Relief for Participating Class Members

While denying all liability and wrongdoing, Defendant has agreed to pay a Gross Settlement Fund of $300,000 to resolve the claims in this case on a class action basis. The Gross Settlement Fund is the maximum amount that Defendant shall be obligated to pay under the Settlement and is allotted solely for the 350 individuals identified in the Defendant's Class List produced on June 15, 2022. Only those individuals shall be bound by the Settlement Agreement.

The "Net Fund" is the Gross Settlement Fund minus the following deductions, once approved by the Court: Settlement Class Counsel's attorney fees and litigation costs; the Settlement Administrator's costs; and the Settlement Class Representative's Enhancement Award. The Net Fund shall be distributed pro rata to Settlement Class Members ("Settlement Class Participants").

Of the Gross Settlement Fund, 90% is allocated for payments to Subclass 1, which equates to payments in the gross amount of $1,250 per person. Of the Gross Settlement Fund, 10% is allocated for payments to Subclass 2, 10% is which equates to payments in the gross amount of $223.88 per person. After all deductions are made, Subclass 1 members are estimated to receive a check in the net amount of $673.76, and Subclass 2 members are estimated to receive a check in the net amount of $120.67.

Unless they exclude themselves from the settlement, all Class Members will automatically receive a settlement check. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate.

Under the terms of the Settlement, the entire Gross Settlement Amount will be distributed and **no portion of it shall revert** to the Defendant. Settlement Class Participants will have 125 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to the Legal Aid Chicago as a *cy pres* recipient.

### E.  Class Representative Enhancement Award

Contemporaneous with the filing of this Motion, Class Counsel filed a Motion for Attorneys' Fees, Costs, and Enhancement Award ("Fee Motion").  In exchange for her service on behalf of the Class Members, the Settlement Agreement provides for an Enhancement Award of $10,000 to be paid to Maysoun Abudayyeh.  As explained in the Fee Motion, Ms. Abudayyeh filed this action on December 23, 2020.  Far from being a passive client, Ms. Abudayyeh engaged fully

in this case, working with her counsel through written discovery, regularly providing information to her attorneys, assisting in any way that she was asked by her attorneys, and attending a lengthy settlement conference. Ms. Abudayyeh took substantial direct and indirect risk by bringing the action in her name and agreeing to participate fully in discovery and trial. The time, risk, and effort Ms. Abudayyeh put into the case should be recognized and encouraged through the Enhancement Award.

### F. Attorneys' Fees and Costs

Consistent with the Fee Motion, Class Counsel requests 40% of the Settlement Fund as attorneys' fees and $991 for reimbursement of out-of-pocket litigation expenses. As more fully explained in the Fee Motion, courts in this Circuit have regularly awarded 40% of the gross fund as attorneys' fees in common fund class action settlements. This case was heavily litigated, resulting in Class Counsel incurring a substantial amount in fees, which exceeds 40% of the fund. In light of the case law concerning RLA preemption, Class Counsel took significant risk in accepting this matter.

Here, it is warranted and appropriate to compensate Class Counsel in the manner that plaintiffs' counsel are commonly compensated in such cases. *See Prelipceanu v. Jumio Corp*., 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (Mullen, J.) (awarding 40% of BIPA common fund settlement as attorneys' fees); *Sekura v. L.A. Tan Enters., Inc*., 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (Garcia, J.) same); *McGee v. LSC Commc'nd, Inc*., 2017-CH-12818 (Cir. Ct. Cook Cnty. Nov. 11, 2019) (Atkins, J.) (same); *Zepeda v. Intercontinental Hotels, Grp., Inc.,* 2018-CH[1]02140 (Cir. Ct. Cook Cnty.) (Atkins, J.) (same); *Svagdis v. Alro Steele Corp*., 2017-CH-12566 (Cir. Ct. Cook Cnty. Jan. 14, 2019) (Larsen, J.) (same). Such compensation is justified by the risk counsel took in filing and the work they performed in aggressively litigating

this matter, and procuring a just settlement for hundreds of Illinois workers. *See, e.g., Binissia v. ABM Indus., Inc.*, No. 13 CV 1230, 2017 WL 4180289 (N.D. Ill. Sept. 21, 2017) (approving settlement in FLSA claim wherein class received $1,011,236.59 and class counsel received $3,788,763.42 in attorneys' fees and costs) (Gotschall, J.). The Class does not object to such fees – it is highly significant that the total amount of Plaintiff's requested fees was clearly identified in the Class Notice and that zero (0) objections were received. As a result, for the reasons identified herein and detailed more specifically in the Fee Motion, the requested attorneys' fees of $120,000 and reimbursement of litigation expenses in the amount of $991 should be awarded to Class Counsel.

## V.    FINAL APPROVAL IS WARRANTED

Federal courts strongly favor and encourage settlements, particularly in these matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that the "claims, issues, or defenses of a certified class...may be settled...only with the court's approval...after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *AIG v. ACE INA Holdings*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018);

*see, e.g., Snyder v. Ocwen Loan Servicing*, No. 14 CV 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

In deciding whether a settlement is fair, reasonable, and adequate, courts consider following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Wong v. Accretive Health*, 773 F.3d 859, 863 (7th Cir. 2014) (the "*Wong* factors"); *accord Synfuel v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g., In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019). Applying these factors, the Court should find that the Settlement is fair, reasonable, adequate, and should be approved.

### A. Rule 23(e)(2) Factors Favor Final Approval.

####     i.     The Class Representative and Class Counsel Have Adequately Represented the Class

To establish that class counsel and the class representative have adequately represented the class, courts consider their performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is satisfied where the class representative diligently participated and class counsel vigorously litigated. *Snyder*, 2018 WL 4659274, at *4; *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both

through motion practice on the legal merits and through discovery of facts and potential damages"). Key to this factor is assessing whether class counsel and the class representative had sufficient information to properly negotiate a class-wide settlement. *See Snyder*, 2018 WL 4659274 at *4. This element corresponds with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

Class Counsel and the Class Representative here vigorously pursued this case for several years prior to negotiating a settlement. As described above, Plaintiff has briefed two motions to dismiss, sought depositions of key witnesses, exchanged initial disclosures, issued and received written discovery, and obtained additional key class information from the Defendant in connection with the settlement conference. Class Counsel navigated the complex issues surrounding RLA preemption of BIPA claims following *Miller v. Southwest Airlines*, 926 F.3d 898 (7th Cir. 2019). Ms. Abudayyeh cooperated throughout the entirety of this matter, including answering written discovery, fielding questions, regularly conferring with counsel throughout the proceedings, and attending the settlement conference. The Parties exchanged mediation statements that laid out their factual and legal theories which were thoroughly addressed during settlement conference overseen by Magistrate Judge McShain. At mediation, Class Counsel negotiated a settlement that obtains meaningful non-reversionary monetary relief, with an appropriate release of claims. In total, the parties engaged in significant, substantive discovery and litigation that allowed them to comprehensively review and weigh the available evidence, weigh the risks and probabilities of success, and calculate a range of potential damages prior to engaging in settlement discussions. Accordingly, the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class and Rule 23(e)(2)(A) is satisfied.

The settlement terms were negotiated at arms-length between attorneys experienced in the litigation, (de)certification, and settlement of class actions; and, after years of contentious litigation, an agreement was ultimately brokered by Magistrate Judge McShain. Although the Parties broached the topic of settlement discussions several times throughout the pendency of this case, they were not within the realm of negotiations until Spring of 2022. At that time, counsel considered whether it would be possible to entertain settlement discussions. In order to broach the gulf between the parties' positions, they agreed to engage in negotiations with the assistance of the Magistrate Judge and with the agreement that Envoy would provide certain information about the Class that had not yet been obtained in discovery.

Counsel for both parties understand the unique and unsettled legal and factual issues involved in the case. BIPA litigation is an expanding and rapidly evolving area of law, and at the time that the parties attended the settlement there existed multiple questions of law that remained unsettled by the courts. The Settlement was reached only after a substantial amount of litigation, after the parties' counsel assessed the strengths and weaknesses of the case throughout the course of discovery, and culminated in settlement following lengthy settlement discussions with the assistance of Judge McShain. Indeed, the settlement was not reached on the day of mediation, but required additional consideration by the parties in the days that followed. Through their experience and with the assistance of Judge McShain, the attorneys were well positioned to evaluate the strengths and weaknesses of their clients' positions, as well as the appropriate basis upon which to settle the case. Accordingly, the settlement was properly obtained through arm's-length negotiations and was non-collusive.

The Settlement Secures Positive Relief for Class Members

The Settlement provides more than adequate relief for Class Members.  After all deductions are made, Subclass 1 members are estimated to receive a check in the net amount of $673.76, and Subclass 2 members are estimated to receive a check in the net amount of $120.67.  This is a substantial per-person recovery that leaves little doubt that the benefit to the Class is quite positive.  The per-person recovery substantially exceeds the amounts awarded to individuals in many previously approved BIPA class settlements. *Compare with Baldwin v. Metrostaff*, No. 2019-CH-04285 (Il. Cir. Ct. Cook Cnty. May 3, 2022) (Wilson, J.) (approving BIPA settlement of $292.98 net per person for 2,251 class members); *Zhirovetskiy v. Zayo Grp., LLC*, No. 2017-CH-09323 (Il. Cir. Ct. Cook Cnty. Apr. 8, 2019) (Flynn, J.) (approving reversionary fund for 2,200 class members, which capped payments at $400 <u>gross</u> per member); *Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140 (Il. Cir. Ct. Cook Cnty. Dec. 5, 2018) (Atkins, J.) ($500 gross); *Taylor v. Sunrise Senior Living Mgmt., Inc.*, No. 2017-CH-15152 (Il. Cir. Ct. Cook Cnty. Feb. 14, 2019) ($115 or $40) (Loftus, J.); *Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496 (Il. Cir. Ct. Cook Cnty. Aug. 1, 2019) (Cohen, J.) ($500 gross) (attached hereto as <u>Group Exhibit C</u>).

Critically, the fact that the Settlement Fund is non-reversionary maximizes the per-claimant recovery without monetary benefit or reversion to the Defendant. *See, e.g., Zhirovetskiy*, 2017-CH-09323 (reverted up to $490,000 of funds to defendant); *Rosenbach v. Six Flags Ent. Corp.*, No. 2016-CH-00013 (Il. Cir. Ct. Lake Cnty. Oct. 29, 2021) (approving reversionary fund, which capped class member payments at $200 or $60 depending on date of finger scan and reverted unclaimed funds to defendant); *Lark v. McDonald's USA, LLC*, No. 17-L-559 (Il. Cir. Ct. St. Clair Cnty. Feb. 28, 2022) (approving reversionary fund, which capped class member payments at $375 or $190 depending on date of finger scan and reverted millions

of dollars in unclaimed funds to defendants); *Marshall v. Lifetime Fitness, Inc.*, No. 2017-CH-14262 (Il. Cir. Ct. Cook Cnty. July 30, 2019) (approving claims-made reversionary fund of $270 per class member, reverting the remainder to defendant). Here, none of the funds will revert to Defendant, which serves the deterrent function of the statute and maximizes the benefits to the Class. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶¶ 36, 37, 129 N.E.3d 1197, 1207. Any residual funds will benefit Legal Aid Chicago.

### iv. Class Members are Treated Equitably

Of the Gross Settlement Fund, 90% is allocated for payments to Subclass 1, which equates to payments in the gross amount of $1,250 per person. Of the Gross Settlement Fund, 10% is allocated for payments to Subclass 2, 10% is which equates to payments in the gross amount of $223.88 per person. After all deductions are made, Subclass 1 members are estimated to receive a check in the net amount of $673.76, and Subclass 2 members are estimated to receive a check in the net amount of $120.67. The Fund is allocated in this manner because Envoy asserts, and provided evidence to demonstrate, that Members of Subclass 2 had entered into a binding arbitration agreement and released their BIPA claims in exchange for consideration in the form of additional time off. In light of the fact that Subclass 2 Members likely released their BIPA claims and had already received consideration for the waiver, it is equitable for them to receive a reduced amount of the Settlement Fund.

### B. The Proposed Settlement is Fair, Reasonable, and Adequate.

#### i. Further Litigation Would be Highly Complex, Protracted, and Expensive to Address the Merits of Plaintiff's Claims and Class Certification

A great deal of uncertainty remains in BIPA litigation writ large as well as specifically in this matter, concerning both the merits and the ability for all Class Members to be certified. In particular, should the Illinois Supreme Court decide that a one-year limitations applies to BIPA

claims the vast majority of Class Members who would benefit from this settlement would instead be rendered ineligible to obtain any relief because their claims would become time-barred. *See Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, 184 N.E.3d 466, <u>appeal allowed</u>, 184 N.E.3d 1029 (Ill. 2022). Similarly, if the Illinois Supreme Court holds that BIPA claims only accrue upon the first scan, then the vast majority of Class Members' claims would become time-barred. *See Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021).

This matter faces additional hurdles due to the complexities caused by the unionized Class Members. Although Plaintiff remains confident in her position, Defendant's second Motion to Dismiss remains pending. If successful, the case would be dismissed. Additionally, as described above, Envoy provided evidence that Subclass 2 Members may have entered agreements that could terminate their BIPA claims.

All of the above constitute materially significant risks to the Class if final approval is not granted by the Court. Considering the nature of the legal questions at issue and that the parties will be in uncharted waters, it is highly likely that class certification and/or decertification would be appealed, and any judgment would be appealed by whichever party is unsuccessful. This matter has already been pending for over two years. If litigation continues, this case would not conclude for several more years with no guarantee of future success.

ii.      <u>Administration and Notice Procedures were Robust, and the Settlement has been Well Received by the Class Members</u>

As described herein, class administration and notification procedures were robust and employed the best mechanisms to thoroughly identify and notify Class Members at the earliest possible juncture, providing them with as much time as possible under the circumstances to opt out or object to the settlement. The Claims Administrator then performed multiple searches to update addresses. Of the 350 Class Members, only four could not be located. As such, 346

Settlement Class Members (98.85%) received notice. None of the Class Members opted out or objected to the terms of settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (granting final approval of class settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'").

The lack of objectors denotes support for the settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 6406084 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ( "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). The fact that none of Class Members have neither opted-out nor filed objections to the proposed Settlement is "strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000). As such, the final approval is justified and should be granted in this case.

All Class Members who did not exclude themselves will receive a check without having to submit claims. Since the Class Members did not have submit claims in order to participate, this means 346 out of 350 Class Members (i.e., 98.85%) will receive direct cash payments. Claims-made class settlements typically result in less than 15% of all eligible members receiving payment. *See McLaughlin on Class Actions § 6:24* (8th ed.) ("claims-made settlements typically have a participation rate in the 10–15 percent range."); *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007) (noting that it

is not unusual to have participation rates of 10 to 15% and examining examples of rates lower than 5%); *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%."). This is a notice and participation rate with far greater success than typically achieved in class settlements and warrants final approval.

iii.     The Opinion of Competent Counsel Weighs in Favor of Approval

Class Counsel is highly experienced in litigating and negotiating class action settlements, particularly BIPA matters. In the opinion of counsel, the terms of the Settlement are fair and provide significant compensation to the Class Members, especially after considering the potential length, risks, complexity, and available damages. Instead of facing the uncertainty of a potential award (or loss) years from now, the Settlement allows Plaintiff and the Class Members to receive immediate, certain, and sizeable relief. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (*internal citations omitted*) ("settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation").

Under BIPA, an aggrieved party may recover up to $1,000 per negligent violation. However, damages are discretionary, not mandatory. *Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 IL App (1st) 210279, ¶ 66 fn. 4. The Court could award less than this amount and any damages award could be further reduced by the appellate court. At present, the Illinois Supreme Court has yet to determine what constitutes a "violation" for which a person may recover. *See id.*

Here, Class Counsel affirms that this settlement provides a fair value and a significant benefit to the members of the Class, which meets or exceeds the typical BIPA class settlement. All Class Members who did not exclude themselves will receive a check without having to submit

claims. In this matter, 98.85% of all Class Members will receive direct payments and any residual funds will be paid to a cy pres recipient.

Class Counsel strongly endorses this Settlement. These facts weigh heavily in favor of final approval. *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d. 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations. . . suggest that the settlement is fair and merits final approval").

## VI. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement, including all of the relief requested herein and in the proposed final approval order. A copy of the proposed final order is attached as <u>Exhibit D</u>, Final Order and Judgment and will be delivered to the Court electronically.

Respectfully submitted,

Dated: January 9, 2023

/s/ Alexis D. Martin
One of Plaintiff's Attorneys

Alejandro Caffarelli
Alexis D. Martin
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880
*acaffarelli@caffarelli.com*
*amartin@caffarelli.com*

Robin Potter
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
Tel. (312) 861-1800
*rpotter@fishlawfirm.com*
*mbaltabols@fishlawfirm.com*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on January 9, 2023, which will serve a copy on all counsel of record.

/s/      Alexis D. Martin